# CHARLESTON.

FRED C. PRICHARD *et als. v.* THE COUNTY COURT OF KANAWHA COUNTY.

(No. 6798)

Submitted October 7, 1930. Decided October 14, 1930.

*Livezey, Hogsett & McNeer,* for plaintiffs in error.
*E. S. Bock,* for defendant in error.

WOODS, JUDGE:

Fred C. Prichard and R. H. Williams, trustees, prosecute this writ from a judgment of the circuit court of Kanawha

county affirming the action of the county court of said county in refusing the release from taxation certain properties held by them for the use, benefit and advantage of the Board of Trustees of Prichard School, a corporation.

The Board of Trustees of Prichard School was organized in 1927 under chapter 57 of the Code for the purpose of establishing and maintaining a school at Ona, in Cabell County. The purposes of this corporation are in the main: First. To establish, conduct and maintain a school of learning to be known as the Prichard School. Second. As far as practicable to establish, conduct and maintain in said school courses of instruction in the branches of learning now or hereafter taught in the public, primary and high schools and also practical courses in instruction in the trades and manual arts and in agriculture and its allied pursuits and subjects. Third. To educate and train in said school, primarily, poor and deserving boys and girls of sound mind and body and especially orphans and half orphans. Fourth. As far as possible to provide, within the school grounds, a place of residence for pupils admitted to said school, and teachers and others employed therein. Fifth. To inculcate in the students admitted to said school Christian ideals, to the end that they may become useful, moral and upright citizens and followers of Jesus Christ.

This institution, planned to accommodate about 200 children, was established largely through the efforts of Fred C. Prichard, then a resident of Huntington, who conveyed a farm of about 600 acres for a site, and provided funds with which a large school building was in part erected, together with a power plant, barns and other necessary buildings. Other real estate, among which was a considerable number of properties and undivided interest in properties situate in Fayette, Boone and Kanawha Counties (all clear of liens of every kind), were conveyed to the appellants herein for the sole use and benefit of the Board of Trustes of Prichard School. The conveyance is irrevocable, and under the terms thereof the property is held and all the rents, issues and profits arising therefrom to be used solely for the use, benefit and advantage of the school, no part thereof to be used for private purposes or profit. Shortly after the trust was executed, it was presented

to the State Tax Commissioner, as provided by law, who upon examining the same, approved it and certified his approval on the deed, and it was admitted to record in the office of the county clerk in each of the counties in which the property was located. The property located in Kanawha County was placed on the tax books of said county for the purpose of taxation.

This case presents the single question whether the property is subject to taxation. Just what property of an educational institution is exempt from taxation depends upon the wording of the statute. The constitutional and legislative enactments of the several states of the union are widely divergent in the provisions thereof. Hence, we will confine our examination of them to our own state and those states having statutes similar in phraseology to ours. All the decisions, however, are in agreement that the exemption laws must receive a strict construction. Nothing is left to intendment as to the wish of the legislature. With these principles in mind, let us look to our statute. So much of section 57, chapter 29 of the Code as relates to educational institutions reads: ''All property, real and personal, described in this section, and to the extent herein limited, shall be exempt from taxation; that is to say: * * * property belonging to colleges, seminaries, academies, and free schools, if used for educational, literary or scientific purposes, including books, apparatus, annuities, money and furniture.''

There is no limitation upon the above exemption for educational purposes by reason of the fact that the property may be held or leased out for profit, as is true in the case of property used for charitable purposes. The exemption is unqualified. ''Use for educational purposes is the test of the exemption,'' said JUDGE HATCHER in *State ex rel. Farr* v. *Martin,* 105 W. Va. 600. While, as we have said, the statute must be strictly construed, this rule will not be pushed to the extent of unreasonableness. It is the duty of the court to ascertain and carry out the intent of the legislature. 27 L. R. A. (N. S.) 910. In 1917 our legislature extended the scope of section 57 by adding the following: ''And, provided, further, that such exemption from taxation shall apply to all property, including the principal thereof, and the income therefrom, held for a term of years or otherwise under a bona fide deed of trust,

transfer or assignment, by a trustee or trustees required by the terms of such trust to apply, annually, the income derived from such property to education, religion, charity and cemeteries, when not used for private purposes or profit.'' In the instant case the property in question is held for a term under a bona fide deed of trust by trustees, who are required by its terms to apply annually the income derived from such property to the purposes of the school. After such conveyance to them, the trustees borrowed money and secured a repayment thereof by a lien on the property, and all the money so borrowed was used in completing the buildings on the school grounds. True, a phase of this case was before this Court in *State ex rel. Farr* v. *Martin, supra.* It involved the assessment of Prichard Hotel, located in the city of Huntington. It was likewise conveyed to the appellants for the use of the school. The taxes for the year 1927 were involved. While impliedly holding that it came within the purview of the act of 1917, it was held that it should not be exempt from taxation, for the year 1927, because no part of the income for that year was used for educational purposes, the liens against the property being greater than the assessed value of the property, thus all of the income of the property for the year in question went to the lienholders and not a dollar went to the school. How different the facts in the instant case. It is true that the property is leased and the income used to repay a debt against it, but this debt is the debt of the trustees, and was not against the property when conveyed to them; and the money so loaned was used for educational purposes. The loan merely made it possible for the trustees to use the income from the property before it actually accrued. The future income to the extent of the loan has already been used by the trustees for educational purposes; it still goes to the trustees, but is turned over by them to the lender to replace the money already used for educational purposes. For the present purposes the legislative intent and the terms in which it is expressed, are, we think, free from all uncertainty. That the trustees have placed themselves within its provision seems conclusive.

But is the statute (chapter 29, section 57) constitutional?

Our constitutional provision regarding exemption, section 1, Article 10, is as follows: "Taxation shall be equal and uniform throughout the state, and all property, both real and personal, shall be taxed in proportion to its value, to be ascertained as directed by law. No one species of property from which a tax may be collected, shall be taxed higher than any other species of property of equal value; but property used for educational, literary, scientific, religious or charitable purposes  *  *  * may, by law, be exempted from taxation." The Constitution, it is seen, does not of itself exempt any property from taxation. It merely gives legislative authorization to do so. Hence, it is necessary to inquire whether or not the property has been exempted by the statute, and this inquiry turns upon its status. The appellee here, while admitting the truth of the facts as herein stated, maintains that the word "used" should be limited to school buildings, dormitories, school books and the like. Some decisions are to this effect. See *Washburn College* v. *Commissioners*, 8 Kan. 344, and *Cincinnati College* v. *State*, 19 Ohio 110. The history and development of the organic provision in question, as disclosed by previous legislation in Virginia, the parent state, may properly be considered upon this inquiry. Turning to that state we find her constitutional provision, prior to 1902, regarding exemptions very similar to our own. It read: "The legislature may exempt all property used exclusively for state, county, municipal, benevolent, charitable, educational and religious purposes." The only difference in phraseology between the two Constitutions is that the Virginia instrument uses the word "exclusively". If anything, this would make the limited construction insisted upon by the county court more reasonable. We shall consider the decisions of the Virginia court while the foregoing provision was a part of its organic law. A case very much in point here is that of *Petersburg* v. *Petersburg*, 78 Va. 431. Here the Petersburg Benevolent Mechanics' Association, a charitable organization, was the owner of a business building, in the city of Petersburg, which was largely rented out, but the proceeds therefrom were used exclusively for the purposes of the institution or association. The Virginia legislature had passed an act exempting from taxation property owned by charitable

organizations, when the income therefrom was devoted exclusively to charitable or school purposes. The city of Petersburg contended, however, that this statute was violative of the constitutional provision just quoted, on the ground that the legislature had no power to exempt property from taxation which was not physically used by the institution. The court, however, said: "It is sufficient to say that we think the grant of power to exempt all property used for the purposes enumerated, carries with it the power to exempt property, the proceeds of which are devoted to any of those purposes, and that the act in question is constitutional and valid." Later in 1901, the Virginia court met the same question in the case of *Staunton* v. *Mary Baldwin Seminary*, 99 Va. 653. The question involved there was the right of the city of Staunton to tax certain houses and lots owned by the Mary Baldwin Seminary, which were leased by the seminary and the rents derived therefrom used exclusively for the purposes of the school. It was insisted by the city there, as here, that the legislature had no power under the Constitution to exempt any property from taxation which was not actually used in the seminary for school purposes. The court, however, held that they were controlled by the decision in the *Petersburg* case, and upheld the contention of the seminary.

JUDGE MILLER reflects how the foregoing Virginia decisions are viewed in *In re Masonic Temple*, 90 W. Va. 441, by the following: "In Virginia, from which we have derived most of our laws and policies, such societies are exempted. It was held in *Petersburg* v. *Petersburg*, 78 Va. 431, that a statute which provided that the real estate owned by Masonic, Odd Fellows and other like benevolent associations, when the proceeds arising from such property are devoted exclusively to charitable or educational purposes, shall be exempt from taxation, carried with it the exemption of such proceeds, however acquired." Also in *State* v. *Kittle*, 87 W. Va. 526, in discussing the liberality with which the exemption laws should be construed, JUDGE POFFENBARGER said: "So long as the court stays within the terms used, it may give effect to the spirit, purpose and intent of the makers of the instrument. The rule permits, and other laws require, rational interpretation within the terms

actually used. [Citing cases.] Under these limitations and restrictions of its operation, a court is obviously at liberty to inquire, by all legitimate means, whether the words 'used for * * * religious * * * purposes', found in section 1 of Article 10 of the constitution warrant legislative exemption of property not used as a place of actual worship, but used in furtherance of the general purposes of the church by which it is owned and used.''

In Kentucky and Ohio it has been held that property constituting an endowment fund of a charitable institution, and held for income is exempt from taxation. Thus, the property belonging to and constituting an endowment fund for the charitable and educational purposes of a female orphan school, which is a charitable and educational institution, is exempt, although continuously rented out, and the annual income only used for the charitable and educational purposes of the institution. *Kentucky Female Orphan School* v. *Louisville,* 100 Ky. 470. The Constitution of that state provides: ''There shall be exempt from taxation * * * institutions of public charity.'' The court in the last mentioned case said: ''Upon the whole it would seem that when the statute exempts the 'institution' from taxation and no qualifying words are used showing or tending to show that only the property *used* by the institution, * * * is to be exempt, then the associated entity—the corporate being—with its estate as an entirety, is embraced by the word 'institution.' '' In Ohio the constitutional provision (section 2 of Article 12) provides: ''Laws shall be passed taxing by uniform rule all monies, credits, * * * but * * * institutions of purely public charity * * * may, by general laws be exempted from taxation.'' Construing the constitutionality of the statute enacted thereunder, the court held that the endowment fund of a college, which belongs exclusively to it, and which is devoted solely to deriving an income for its support, is exempt from taxation. *Little, County Treas.* v. *United Presbyterian Theological Seminary,* 72 Ohio St. 417. In 1915 the Benjamin Rose Institute, a corporate body other than for profit, brought its suit to enjoin the collection of taxes which had been levied on certain real estate held by said trustees for its benefit and asked exemption thereof. The

court enjoined the collection exempting from taxation such property, including endowment funds which belonged exclusively to it and which, with the income arising therefrom were devoted solely to its support. *Myers, Treas, et al.* v. *Benjamin Rose Institute,* 92 Ohio St. 238.

We could cite a multitude of cases from other jurisdictions holding pro and con on the precise question raised here, but of what avail? From the decisions quoted, it may be gathered that it is the purpose of our state under its tax laws to deal liberally with and foster and encourage all charitable and educational institutions when their conduct and operation does not result in private gain to the persons or corporations or the stockholders therein that own them, and when all the income derived from them is devoted solely to the cause of education. In the case at bar the trustees are frankly using the property under their control for the sole use and advancement of the school and not for profit. The end sought is the public good. The Court takes judicial knowledge of the fact that many of our young men and women are receiving instruction in the several denominational schools of the state. To that extent such schools and colleges are relieving the state of the duty of giving these young people an education that they may be the better prepared for citizenship—a no small relief from the burden of state taxes. These schools are largely dependent upon the gifts of their friends for support and maintenance. . To aid such schools and other charitable institutions seems to us to be the very purpose of the amendatory act of 1917. Mr. Bryce in his American Commonwealth (Vol. 2, pp. 481, 482), quotes from an address by President Eliot as follows: ''The successful establishment and support of religious institutions—churches, seminaries, and religious charities—upon a purely voluntary system, is an unprecedented achievement of American democracy. * * * The endowment of institutions of education, including libraries and museums, by private persons in the United States is a phenomenon without precedent or parallel, and is a legitimate effect of democratic institutions.''

This statute very jealously guards the right of the public, by providing that the State Tax Commissioner must give his

sanction to the project before such property may be withdrawn from taxation. This sanction is only temporary. Whenever it may be made to appear to him that the property is not used in good faith for the purposes of the school, he may withdraw such authorization and the property put upon the books for taxation. Thus is the public protected from charlatans who perchance may seek to advance themselves at the expense of the public good. The State Tax Commissioner has investigated the matter under our present consideration, and given to it his approval.

The conclusion reached is that the Kanawha County properties mentioned in this case are exempt from taxation under their present use. The judgment of the circuit court is therefore reversed and the case remanded with directions to enter a proper order releasing the properties from taxation for the year 1928.

*Reversed and remanded.*