HOMER L. FERGUSON, TRUSTEE, *et al. v.* T. C. TOWNSEND, STATE TAX COMMISSIONER

(No. 7209)

Submitted January 20, 1932.    Decided January 26, 1932.

*F. H. Skinner,* and *Koontz, Hurlbutt & Revercomb,* for relators.

*John T. Simms,* for respondent.

LIVELY, JUDGE:

Relators petition for mandamus against Townsend, State Tax Commissioner, to compel him to indorse his approval upon a deed of trust dated March 14, 1931, executed by Archer Milton Huntington and wife to relators, Ferguson and First National Bank, trustees, conveying to said trustees lands in the counties of Kanawha, Nicholas and Clay in this state for alleged educational and charitable purposes, so that said lands may be listed as exempt from taxation under the constitution, Article X, section 1, and under the provisions of chapter 11, article 3, section 9 of the Official Code of 1931. Relator, Mariners' Museum, is a corporation under the laws of Virginia, created and organized for the purpose of building, maintaining and operating in Warwick County Virginia, at the head of Hampton Roads, a museum and library pertaining to nautical subjects. Its purposes and powers are: To build, own, equip, maintain and operate a museum and library pertaining to nautical subjects and things of interest, and otherwise to advance learning, the arts and sciences relating to or bearing on water craft, the marine and marine navigation, thus to promote the public welfare, and provides means for encouraging and carrying on the above mentioned purposes. The tax commissioner, by his demurrer, return and brief contends that the lands conveyed in the

434

trust for the purposes set out are not to be used for educational or charitable purposes as contemplated by the constitution and the statute exempting properties from taxation; and that property in this state cannot be exempted from taxation where an educational or charitable purpose is conducted without the borders of the state. On the other hand, relators affirm that the purposes of the Mariners' Museum is educational and charitable and that property used for such purposes is exempt from taxation whether the educational or charitable purposes are conducted within or without the state.

To meet a call in the return for full proof as to whether said Mariners' Museum is existent and active and proceeding to carry on its work within the limits of its charater powers, and that it was engaged in educational work within the meaning of the constitution and statutes of this state, relators took depositions of witnesses which show that Archer M. Huntington, a man of great wealth (the grantor of the property here involved), some years ago conceived the idea and plan of establishing a museum and library pertaining to all marine interests, open and free to the public with a view of stimulating interest in and educating the public in maritime affairs and water transportation. The idea was crystallized in the incorporation of the Mariners' Museum. Its affairs are conducted by five trustees who serve without pay. These trustees have acquired about 900 acres of land on upper water front of Hampton Roads, a deep harbor way on the Virginia coast. An artificial lake covering 165 acres has been constructed or impounded. About five miles of roads have been built and are being hard surfaced, and the entire boundary is in process of enclosure by fence; a costly granite bridge has been completed on the ground, and some of the lesser buildings have been almost completed. Plans for the museum building to house ship models, pictures, charts, maps, a photostatic room, and a library to accommodate about 170,000 volumes (a part of which have been acquired), have been agreed upon, after much time spent and investigation of plans of buildings in this country and in Europe. These plans are now reduced to blueprints. There has been spent something

like one-half million dollars and the work is in progress. The grounds have been opened and are free to the public certain hours of the day; and it appears that money is obtainable for completion of the plans.

The controversy involves the construction of Article X, section 1 of the constitution, which says that all properties shall be taxed in proportion to its value, but property used for educational, literary, scientific, religious or charitable purposes may, by law, be exempt from taxation; and section 9, article 3, chapter 11, Official Code, which carries into effect the grant of the constitutional power of exemption to the legislature, which section provides: ''All property, real and personal, described in this section, and to the extent herein limited, shall be exempt from taxation * * * property belonging to seminaries, academies and free schools if used for educational, literary or scientific purpose, including books, apparatus, annuities, money and furniture; * * * property used for charitable purposes, not held or leased out for profit * * *, provided, further, that such exemption from taxation shall apply to all property, including the principal thereof and the interest thereupon, held for a term of years or otherwise under a bona fide trust deed, transfer or assignment, by a trustee or trustees, required by the terms of such trust to apply, annually, income derived from such property to education, religion, charity, and cemeteries when not used for private purposes for profit. Such transfer or assignment shall be in writing, and have the approval of the tax commissioner indorsed thereon; and a copy thereof shall be filed in his office * * *.'' The remainder of the proviso provides for examination and visitation by the tax commissioner in order that he may determine whether the trust is carried on in a bona fide way, or is created or carried on for the purpose of evading taxation; and if he determines from that examination and visitation that it was so created or is not so carried on, he may withdraw his approval, and in the manner in which he shall withdraw it, including appeals from his action thereon.

The taxes for all purposes upon the lands involved approximate $15,000.00 annually, and the present income therefrom is about $7,000.00. Assuming that the Mariners' Museum

is educational and charitable in character and is being projected and carried on bona fide, and that when such facts appear, the tax commissioner may be compelled to indorse the trust deed thus directing the non-assessment or non-collection of taxes thereon, all of which is here made controversial, we are confronted with the primary contention, that lands in this state and the income therefrom shall not be exempt from taxation to support educational or charitable purposes carried on in other states or nations. If waiver of taxation to assist or carry on such purposes without the borders of the state can be had, then the location of such institutions is immaterial, whether they be in the western or eastern hemisphere; or whether they be for the benefit of American or foreign people. Was it the intention of the framers of the constitution that taxes on properties in this state should be waived in order to carry on educational or charitable purposes wheresoever undertaken on the globe? The constitution and laws are to promote the general welfare of the people of this state, their tranquility and prosperity; and have no extra-territorial purposes or effect. We think it unreasonable to asume that the framers of the constitution or the people who adopted it intended that the tax revenues could or would be applied to the education or uplift of foreign peoples. To exempt property in the state from taxation in order to assist purposes foreign to the state's welfare, is, in final analysis, equivalent to appropriating the taxes on that property to those purposes. It is true that the constitution and statute in terms do not say that the educational institutions, such as seminaries, academies and free schools, or the charity, shall be within the state; and it is argued that the rule of construction, firmly established, to the effect that in construing laws the intention must be arrived at from the words employed, applies. We always adhere to that rule based, as it is, upon reason. And viewing the constitution and statute in the light of the rule, and keeping in mind the purposes for which the state government was formed, we are not constrained to hold that the language used intended that the state's taxes could be devoted to the benefit of foreign peoples. Reason, the soul of all laws, dictates that conclusion. Any

philanthropic citizen of the state may devote his properties therein to educational, religious or charitable purposes in whatever country they may be carried on. This is his private concern. But when he so devotes such property secured and protected by the state laws, that property should bear its just proportion of governmental burden. If the institution or charity be within the state and the people of the state derive corresponding benefit, then his property and the income therefrom may be exempted from taxation. Such, we think, is the spirit and purpose of the constitution and statute under consideration. In *State* v. *McDowell Lodge,* 96 W. Va. 611 (1924), 123 S. E. 561, 38 A. L. R. 31, we held that property of a charitable institution was not exempted from taxes although the income therefrom was in part devoted to charity. The legislature of 1927 added the above partially quoted proviso to the exemption law, expressly exempting all properties the income from which is applied annually to education, religion, charity, etc. And in *Pritchard* v. *County Court,* 109 W. Va. 479 (1930), 155 S. E. 542, we decided that the lands there involved were exempted, the income therefrom being applied annually to support a school located in this state. If the Mariners' Museum were located in this state where its people would be benefitted, the *Pritchard* case would govern.

The question as to whether property in this state is exempted from taxes if, together with the income therefrom, it is used to foster educational or charitable ventures in other states or nations has never been presented to this Court. It is one of "first impression". However, other states have dealt with the question, and relators cite cases, including *In re Fiske's Estate,* (Cal.) 172 Pac. 390; *In re Frain,* (La.) 75 So. 847; *President and Fellows of Harvard College* v. *State,* (Ohio) 140 N. E. 189; *Sage's Executors* v. *Com.,* (Ky.) 244 S. W. 779, and *Bingham's Adm'r.* v. *Com.,* (Ky.) 244 S. W. 257. These are inheritance tax cases wherein the testator willed properties for the benefit of charitable or educational institutions or purposes carried on outside of the state, and the decisions were that the bequests were free from inheritance tax. Other states have held to the contrary. *Morgan* v. *Atchison, etc.*

438

*Ry. Co.*, 116 Kan. 175, 225 Pac. 1029; *Minot* v. *Winthrop*, 162 Mass. 113; *Pierce* v. *Stevens*, 205 Mas. 219; *People* v. *Woman's Home Missionary Society*, 303 Ill. 418; *Re Quick*, 257 Mo. 422, 51 L. R. A. (N. S.) 817; *Re Hunt*, 160 N. Y. Supp. 1115; *Humphreys* v. *State* (1904), 70 Ohio St. 67, and *Provincial Secretary-Treasurer* v. *Robinson*, (Canada 1919), 49 D. L. R. 361.

In *Humphreys* v. *State, supra,* it was held that organizations incorporated in other states for public charities were not "institutions" within the meaning of the Ohio statute exempting property transferred for the use of any *institution* of purely public charity, although some of the charitable work was carried on in Ohio, and therefore property devised to such foreign organizations could not escape the collateral inheritance tax. The decision cites with approval *Re Prime* (1893), 136 N. Y. 48, wherein the courts said: "It is the policy of society to encourage benevolence and charity, but it is not the proper function of a state to go outside of its own limits and devote its resources to support the cause of religion, education, or missions for the benefit of mankind at large."

In *Morgan* v. *Atchison, etc. Ry. Co., supra,* the testator bequeathed a large part of his estate to trustees to establish a school for the benefit of orphans and other children at Van Wert County, Ohio, and it was contended that the institution created by the testator (called the Marsh Foundation) was educational, benevolent, and charitable, and therefore exempt from the payment of inheritance taxes. The state admitted the worthiness of the enterprise, but contended that it was not the intention of the constitution and statute to exempt foreign charitable institutions from the taxes. After quoting the provisions of the constitution (similar to that of this state) and the statute exempting from inheritance tax all property for the use of literary, educational, scientific, religious, benevolent and charitable societies or institutions, the court said, in substance, that as the effect of the exemption from the inheritance tax would be equivalent to an appropriation, the intention of the law in exempting educational or charitable institutions was not to exempt foreign institutions

of that character, which at the best, had'only a remote chance of benefitting the people of that state. And in *Alfred University* v. *Hancock* (1905), 69 N. J. Eq. 470, it was stated that the overwhelming weight of authority was that where a law exempted organizations, the exemption included only domestic organizations. In the annotation to *People ex rel. Baldwin* v. *Jessamine Withers Home*, (Ill.) 34 A. L. R. 628, it is said (p. 681) that there is a division of authority as to whether a gift to a foreign corporation is within the meaning of the exemption granted to gifts to charitable institutions, but that the majority of the courts hold that the exemption extends only to domestic and not to foreign corporations. Many of the cases above set out are there listed and discussed, and the cases of *Re Fiske*, (Cal.) *supra*, *Sage's Executors* v. *Com.*, (Ky.) *supra*, and *Bingham's Admr.* v. *Com.*, (Ky.) *supra*, cited by relators are put in the minority decisions. An examination of the cases from other jurisdictions strengthen our conclusion that the policy of this state, deduced from the constitution and statute above set out, is not to permit appropriation of its tax money to foreign education or charity.

The New Jersey cases of *St. Vincent de Paul* v. *Brakeley*, 50 Atl. 589, and *Denville* v. *St. Francis*, 98 Atl. 254, cited by relators, are distinguishable from the instant case. In those cases, the property involved and used for religious and educational purposes and which was exempted from taxation though owned by corporations chartered in other states, was located in New Jersey and used for such purposes in that state. Here, no part of the Mariners' Museum is located in this state, nor is any of its alleged educational and charitable purposes conducted in this state. It is argued that the museum will benefit the people of this state, because Hampton Roads is the state's chief harbor for the shipment of coal, especially for coal from southern West Virginia. The argument is that the coal industry in that part of the state will be stimulated and the entire citizenship correspondingly benefitted. We are not impressed with that argument. There is now no lack of water transportation for coal at Hampton Roads. The coal industry is suffering from want of markets and adequate

prices for the product, and not for transportation either by rail or water.

The prayer for mandamus is denied.

*Writ denied.*