STATE *ex rel.* COUNTY COURT OF MARION COUNTY,

A CORPORATION

*v.*

JOAN E. DEMUS, *Clerk, etc.*

(No. 12309)

Submitted February 25, 1964.     Decided March 24, 1964.

*Amos, Amos & Webb, Hays Webb, Frank C. Mascara,* Prosecuting Attorney, Fairmont, *Caldwell, Trimble & Mitchell, John T. Trimble,* New York City, for relator.

*Thomas J. Whyte,* for respondent.

BROWNING, JUDGE:

In this original proceeding in mandamus, and in the similar proceeding of *State ex rel. County Court of Mineral County* v. *Bane,* a determination of the constitutionality of Chapter 78, Acts of the Legislature, Regular Session, 1963, known as the "Industrial Development Bond Act" is sought.

The pertinent provisions of the act may be summarized as follows:

Section 2 makes certain legislative findings, among them, that the general welfare of the citizens will be promoted by the establishment of industrial plants and that

the means authorized for the promotion of such plants are, as a matter of public policy, for a public purpose.

Section 3 defines "industrial plant" to mean any ". . . site, structure, building, fixtures, machinery, equipment, and related facilities, including both real and personal property or any combination thereof . . . suitable as a factory, mill, shop, processing, assembly, manufacturing, or fabricating plant. . . ."

Section 4 empowers any county or municipality to acquire one or more "industrial plants"; to lease such plants to others, upon such terms as it may deem advisable; and to issue revenue bonds to defray the cost of acquisition, whether by construction, purchase or exchange.

Section 5 provides that any plant acquired by a county shall be located within the county and that any plant acquired by a municipality may be located within or without the bounds of the municipality, so long as it is within the county, but shall not be located within the bounds of another municipality without the other's consent.

Section 7 provides that revenue bonds issued shall be signed by the president and attested by the clerk of the county court under the seal of the court, and shall be payable out of revenues derived from such industrial plant; shall never constitute an indebtedness of the county, or municipality, within the meaning of any constitutional provision or statutory limitation; and shall never constitute or give rise to a pecuniary liability nor be a charge against the general credit or taxing powers of the issuing body.

Section 13 restricts a county court or municipality from any payment out of its general funds, or otherwise contributing, to the cost of acquiring or constructing such plant, and from levying any taxes for such purpose, except that preliminary expenses may be paid out of any surplus, which shall, in turn, be reimbursed out of the proceeds of the sale of the bonds.

Section 15 exempts the bonds, and income therefrom, from taxation, except inheritance, estate and transfer

taxes, and exempts the real and personal property acquired by a county or municipality to be leased to an industrial plant from taxation by the state, county, city or other levying body, as public property, so long as it is owned by the county or municipality.

Section 16 provides that the article shall not be construed as requiring an election prior to the issuance of bonds.

Section 18 relates to severability.

In the instant proceeding, the petition identifies the parties and alleges the adoption of a resolution by the County Court of Marion County authorizing: the acquisition of a building site, the construction of an industrial building thereon and the leasing thereof; the issuance of $1,750,000.00 Industrial Development Bonds to finance the same; prescribing the form of a mortgage and deed of trust to secure the bonds; and the execution of the lease, mortgage and deed of trust, all of which was done; however the clerk of the county court has refused to attest the bonds so prepared or to affix the county seal and relator prays for a writ of mandamus compelling the clerk to do so.

Exhibits filed with the petition disclose that the "industrial plant" to be acquired would be leased to Randco, Inc., a West Virginia corporation, which has an option to purchase the office furniture production line of Remington Rand Systems Division of Sperry Rand, Inc., for a term of twenty-five years, with rights to renew for fifty one-year periods, and the option to purchase at any time after ten years upon payment of the outstanding indebtedness plus $5,000.00.

A rule to show cause why the writ should not be granted was issued February 10, 1964, returnable February 25, 1964, at which time respondent demurred on the grounds that Chapter 78 is unconstitutional under the provisions of Sections 8, 6 and 1 of Article X of the constitution of this state in that it, respectively, authorizes the issuance of bonds without the prior approval of the electorate; authorizes the indirect granting of the credit

of the state to a private corporation; and, exempts from taxation property held by the county court for profit and the interest of the lessee in such property. Respondent also answered admitting the facts alleged in the petition, but again asserted the unconstitutionality of the act for the reasons set forth in her demurrer.

Perhaps the most solemn duty that this Court is called upon to perform is the determination of whether an act of the legislature is consistent with the provisions of the constitution of this state and the constitution of the United States and therefore either valid or invalid, depending upon whether it meets or fails to meet such a test. Article V, Section 1, of the constitution of this state provides that: "The Legislative, Executive and Judicial Departments shall be separate and distinct, so that neither shall exercise the powers properly belonging to either of the others; nor shall any person exercise the powers of more than one of them at the same time, except that justices of the peace shall be eligible to the Legislature." This Court has held that the plain meaning of this article is such that it calls for obedience not interpretation of construction. *State* v. *County Court of Kanawha County,* 138 W. Va. 885, 78 S. E. 2d.569. In the early case of *State* v. *Buchanan,* 24 W. Va. 362, this Court stated that by express language used in Article V of the constitution the legislative, executive and judicial departments of the government must be kept separate and distinct. The courts of this state are by this article forbidden to perform administrative duties. *Sims* v. *Fisher,* 125 W. Va. 512, 25 S. E. 2d 216. Furthermore, the courts of this state are forbidden by this article to exercise legislative authority of any kind. *Sutherland* v. *Miller,* 79 W. Va. 796, 91 S. E. 993. Neither the governor nor any other official of the executive branch of the government may perform a legislative function. *State* v. *Mounts,* 36 W. Va. 179, 14 S. E. 407. Consistent with its holdings as to the power conferred upon officials of the executive and judicial branches of the government it has been held that no judicial authority is conferred upon the legislature and that such body is forbidden to exercise judicial authority thereunder. *W. Va. State Bar* v. *Earley,* 144 W. Va. 504,

109 S. E. 2d 420; *In re Application for License to Practice Law,* 67 W. Va. 213, 67 S. E. 597; *Ex parte Caldwell,* 138 F. 487. However, in the case of *Wheeling Bridge, etc. Railway Co.* v. *Paull,* 39 W. Va. 142, 19 S. E. 551, this Court held that while the constitution separated the functions of government into three distinct parts that it also, after a general declaration of this doctrine, welded these departments into an harmonious whole for the preservation of the largest freedom of individual rights consistent with the general welfare.

A review of the history of the decisions of the Supreme Court of the United States determining its power under the division of powers provision of the constitution of the United States and of the decisions of this Court construing and interpreting power conferred upon it by division of powers provisions of the constitution of this state is interesting indeed. It has been said that the Supreme Court of the United States under the strong leadership of Chief Justice Marshall determined the great powers conferred upon that Court by the constitution of the United States and that only from that time forward has that Court exercised powers equal to those conferred upon the executive and legislative branches of the federal government. In interpreting the provisions of Article VI, Section 39, this Court has held that the powers granted to the legislature therein were conclusive and not subject to judicial review. *Wooddall* v. *Darst,* 71 W. Va. 350, 77 S. E. 264, 80 S. E. 367. However, from that position of relative impotency this Court receded and in the case of *Brozka* v. *County Court,* 111 W. Va. 191, 160 S. E. 914, amplified and distinguished the *Wooddall* case and held that the questions under that section were for the legislature only if its disregard of that constitutional provision were not "clear and palpable". There can be no doubt of the power of this Court to declare invalid an act of the legislature that it finds in plain contravention of a provision of the constitution of this state. This power was last exercised in the very recent case of *Robertson, et al.* v. *Hatcher, et al.,* 148 W. Va. 239, 135 S. E. 2d 675 (decided February 11, 1964), wherein this Court held an act of the legislature providing for at least one delegate

to the lower house of that body to be elected from each of the counties of this state, in clear violation of Article VI, Section 6, of the constitution. This Court is aware of and gives credence to the paramount difference between the provisions of the constitution of the United States relating to the power of Congress and the provisions of our constitution relating to the legislative branch of the government. The former is a grant of power and Congress has the authority to do only that which is specifically provided in the federal constitution. The constitution of this state as regards the power of the legislature is a limitation of power and the legislature may take any action upon any question before it if such act receives the necessary votes of the membership of the two houses of the legislature unless it is clearly inhibited from taking such action by a provision of the constitution of this state. To be more concise, the federal constitution is a grant of power to Congress, the West Virginia constitution is a limitation of power upon the legislature. This Court in giving credence and effect thereto has held that the power of the legislature of this state is "almost plenary" and that its powers are limited only by express restriction or restrictions necessarily implied therein by a provision or provisions of our constitution. *City of Huntington* v. *State Water Commission*, 137 W. Va. 786, 73 S. E. 2d 833; *Harbert* v. *Harrison County Court*, 129 W. Va. 54, 39 S. E. 2d 177; *State Road Commission* v. *Kanawha County Court*, 112 W. Va. 98, 163 S. E. 815.

We come now to a consideration of the specific issues before us in these cases. In so doing our attention is initially directed to the provisions of Section 24, Article VIII, of the West Virginia constitution. That section provides in part that county courts ". . . shall . . . have the superintendence and administration of the internal police and fiscal affairs of their counties. . . . *Such courts may exercise such other powers, and perform such other duties, not of a judicial nature, as may be prescribed by law. . . .*" (Italics supplied.) Even though in the instant case only Sections 1, 6 and 8 of Article X of the constitution are relied upon as invalidating this act, these further constitutional provisions, relied upon in the companion *Bane*

case, will be discussed and determined in the opinion of this case: Sections 9 and 10 of Article III of the West Virginia constitution and Section 1, Article XIV of the United States constitution.

Section 1 of Article X insofar as it is pertinent to the decision of this Court in these cases provides:

> "Subject to the exceptions in this section contained, taxation shall be equal and uniform throughout the State, and all property, both real and personal, shall be taxed in proportion to its value to be ascertained as directed by law. . . ."

One of the exceptions to the basic premise contained in this sentence to the effect that all property both real and personal shall be taxed in proportion to its value is that ". . . property used for educational, literary, scientific, religious or charitable purposes, all cemeteries, *public property,* the personal property, including livestock, employed exclusively in agriculture . . . may by law be exempted from taxation; . . . ." (Italics supplied.) It is apparent from the language used in this exception that it is not self executing. However, its language is clear to the effect that it gives authority to the legislature to exempt all such property as falls within the definition of the terms therein applied. *Prichard* v. *Kanawha County Court,* 109 W. Va. 479, 155 S. E. 542. It is significant but probably not controlling upon the facts of this case that the phrase "property used" modifies only the language "for educational, literary, scientific, religious or charitable purposes," and that there are no such words of limitation with reference to "all cemeteries, public property, . . . ." Pursuant to the mandate of Article X, Section 1, of the constitution, the legislature by the provisions of Code, 11-3-9, as amended, has undertaken to make a general legislative determination of the provisions of Article X, Section 1, and insofar as pertinent the section provides: "All property, real and personal, described in this section, and to the extent herein limited, shall be exempt from taxation, that is to say: property belonging to the United States, other than property permitted by the United States to be taxed under state law; property be-

longing exclusively to the State; property belonging exclusively to any county, district, city, village, or town in this State, *and used for public purposes;* . . . ." (Italics supplied.)

In *Greene Line Terminal Company* v. *Martin,* 122 W. Va. 483, 10 S. E. 2d 901, the city of Huntington owned a wharf which was operated for profit by a lessee. This is the first syllabus point of that case:

> "Under Code, 11-3-9, which exempts from taxation 'property belonging exclusively to any county, district, city, village, or town in this state, and used for public purposes,' a leasehold on a city-owned wharf is not exempt from taxation, where the lessee operates the wharf on a personal profit basis, though public convenience is thereby served."

The decision of this case has been rather severely criticized by a former professor of law at West Virginia University in an article entitled "Public and Public Welfare Property Tax Exemption in West Virginia", 55 W. Va. Law Rev. 171, and the following quotation is from that article:

> "How, then, could the lessee be held taxable, as it was, if the two legislative conditions, exclusive proprietorship and public use, were concurrently satisfied? Of course the quite ordinary technique of judicial legislation supplies the answer. The court started its reasoning from the indisputable proposition that leaseholds are separately assessable in West Virginia and without much trouble concluded that the operator's interest in the wharf was a leasehold rather than, as was contended, a franchise. All this, however, only got the court to, not through the real difficulty. While our tax system undoubtedly contemplates the allocation of taxable values among persons with divided property interests in assessable realty, it does not logically follow that a division of interests generates assessability where none existed before—and furthermore generates it differentially so that some of the resultant divided interests are taxable and others are not. Instead of essaying to grapple with the logical

difficulties, the opinion added to the legislative prescriptions of exclusive ownership and public purpose use, a third element applicable to the estates or interests of individuals in publicly owned property, that they are taxable if exercised 'on a personal profit basis, though public convenience is thereby served.' "

It is also interesting to compare the *Greene Line Terminal* case with the holding of this Court in *Reynolds Memorial Hospital* v. *County Court,* 78 W. Va. 685, 90 S. E. 238, where in the opinion this Court said: "Whether or not property may be exempt from taxation under this section [Constitution, Art. X, Sec. 1] depends on the use to which it is applied, except that 'cemeteries and public property' *may be exempted by law without regard to their use;* they are specifically named and may be exempted by law." (Italics supplied.)

Whatever might be the decision of this Court in this case if the tax exemption were predicated upon the general provisions of Code, 11-3-9, as amended, the language used in Section 15 of the Industrial Development Bond Act succinctly provides that: ". . . the real and personal property which a county court or a municipality may acquire to be leased to an industrial plant according to the provision of this article, shall be exempt from taxation by the state, or any county, municipality, or other levying body, as public property, so long as the same is owned by such county or municipality." Certain it is that the provisions of Article X, Section 1, of the constitution are such as to empower the legislature to make the exemption just quoted even though it may have used milder language in the general act, Code, 11-3-9, as amended. This Court is unanimously of the view that the provisions of this Act are not in violation of Article X, Section 1 of the constitution inasmuch as the factual findings of the legislature in this act as heretofore related are legislative, not juridical, findings and this Court is bound thereby.

The Court of Appeals of Kentucky holding an act similar to the one before us not violative of the constitution of that state said: "The legislative determination of what is a public purpose will not be interfered with by the

courts unless the judicial mind conceives it to be without reasonable relation to the public interest or welfare and to be within the scope of legitimate government." *Faulconer* v. *City of Danville*, 232 S. W. 2d 80. The case of *Chapman* v. *Housing Authority*, 121 W. Va. 319, 3 S. E. 2d 502, is persuasive if not controlling of the issues presented in this case of whether or not this act is in violation of the provisions of Section 1, Article X, of the constitution. The question before this Court in the *Chapman* case was whether real property acquired by a statutory corporation, the Huntington, West Virginia, Housing Authority, for the purpose of eliminating the slums of that city by replacing the outmoded houses in certain areas of that city with new low-rent apartment houses was for a "public purpose" and whether such property owned by such a corporation was exempt from taxation. This Court in holding that the purpose was a public one and that the property was subject to exemption from taxation by an act of the legislature said: "The projects in question, when completed, will not belong to the tenants therein. On the contrary, the legal title will be held by the housing authority for a public purpose. They are public property within the meaning of the West Virginia Constitution, and should be exempt from taxation." In the *Faulconer* case former Chief Justice Stone of the Supreme Court of the United States is quoted from *Carmichael* v. *So. Coal & Coke Co.*, 301 U. S. 495, 57 S. Ct. 868, 81 L. ed. 1245, 109 A.L.R. 1327, as follows: "The evils of the attendant social and economic wastage permeate the entire social structure. Apart from poverty, or a less extreme impairment of the savings which afford the chief protection to the working class against old age and the hazards of illness, a matter of inestimable consequence to society as a whole, and apart from the loss of purchasing power, the legislature could have concluded that unemployment brings in its wake increase in vagrancy and crimes against property, reduction in the number of marriages, deterioration of family life, decline in the birth rate, increase in illegitimate births, impairment of the health of the unemployed and their families and malnutrition of their children." Directly in point is this quotation from the

opinion of *Holly* v. *City of Elizabeth,* 241 S. W. 2d 1001 (Tenn. 1951): "The promotion of the industry authorized by the hereinbefore mentioned provisions of Chapter 137 is clearly of incidental public benefit to the municipality where such industry may be located at least, to the extent that it will furnish employment to a substantial number of its inhabitants. It is, then, at least incidentally for a public purpose, though it results in the promotion of and gain to a private corporation."

The decision of the Chapman case was approved by this Court in *Meisel* v. *Tri-State Airport Authority,* 135 W. Va. 528, 64 S. E. 2d 32. In the opinion the Court used this language: "The Authority being, as we have hereinbefore stated, a public corporation, this case is controlled on the question of tax exemption by the decision in *Chapman* v. *Huntington Housing Authority, supra,* and from the position taken therein this Court does not depart." In *State ex rel. McMillion* v. *Stahl,* 141 W. Va. 233, 89 S. E. 2d 693, is this statement: "Another sentence in Section 1, Article X of the Constitution provides that '. . . public property . . . shall be exempt from taxation'. Undoubtedly, the property of a public service district is public property used for public purposes and we find no basis for objection to the statute founded on the statutory provision exempting property of a public service district.", citing the *Meisel* and *Chapman* cases, and *Bates* v. *State Bridge Com.,* 109 W. Va. 186, 153 S. E. 305.

The act is not in contravention of Section 6 of Article X of the constitution of this state which provides that: "The credit of the State shall not be granted to, or in aid of any county, city, township, corporation or person; nor shall the State ever assume, or become responsible for the debts or liabilities of any county, city, township, corporation or person; nor shall the State ever hereafter become a joint owner, or stockholder in any company or association in this State or elsewhere, formed for any purpose whatever." As heretofore stated the bonds which the county court may issue under this act are self-liquidating revenue bonds and Section 7, to repeat, specifically provides that they shall be payable out of revenues derived

from such industrial plant; shall never constitute an indebtedness of the county, within the meaning of any constitutional provision or statutory limitation; and shall never constitute or give rise to a pecuniary liability nor be a charge against the general credit or taxing powers of the issuing body. Section 13 specifically restricts a county court, in the acquisition or construction of a plant, from any payment out of general funds, and from levying any taxes for such purpose. Section 4 of Article X of the constitution imposes upon the state limitations with respect to indebtedness similar to those imposed upon counties and cities by Article X, Section 6 of the constitution, and this Court has held that the issuance of self-liquidating bonds by the state is not prohibited by Section 4 of Article X of the constitution, *State v. O'Brien,* 142 W. Va. 88, 94 S. E. 2d 446.

While this Court has not had occasion to pass upon the provisions of this section as it relates to counties, it will be observed that the language thereof applies equally to counties and municipalities. In *Brewer v. Point Pleasant,* 114 W. Va. 572, 172 S. E. 717, it was contended that an ordinance of the City of Point Pleasant which provided for the construction and financing of a self-liquidating sewer system was in violation of the provisions of this section of the constitution. In Syllabus Point 4 thereof this Court held: "Where an act, permitting a municipal corporation to issue bonds for a self-liquidating municipal project, provides that the bonds 'shall not be a corporate indebtedness of such municipality,' the bonds do not create debts within the constitutional inhibition against the contraction of public debt." To the same effect is the case of *Casto v. Ripley,* 114 W. Va. 668, 173 S. E. 886, the sole syllabus point of which states: "Bonds issued by a municipal corporation, under legislative sanction, to finance a self-liquidating public project do not create a debt within the meaning of Section 8, Article X, of the constitution."

If there is proper compliance with this act there is no provision in it which will result in the taking of private property without just compensation in violation of Section 9, Article III of the constitution of this state, the due

process of law provision of Section 10 of that document or the equal protection of the laws provision of the Fourteenth Amendment to the constitution of the United States. This Court held in *Chapman* v. *Housing Authority,* 121 W. Va. 319, 3 S. E. 2d 502, which has been cited and quoted from heretofore in this opinion, that the act there being tested as to its constitutional validity was not in violation of any of the provisions of the constitution of this state or the constitution of the United States. In the opinion of that case is this statement:

"... The Fourteenth Amendment to the Constitution of the United States provides that no state shall 'deny to any person within its jurisdiction the equal protection of the laws.' It is said that the city, by furnishing five hundred families, who will be admitted to the dwelling units when completed, services for which the plaintiff and other citizens must pay, will result in a violation of this provision of the Fourteenth Amendment. This Court, however, realizes fully that slums are a great detriment and their clearance and the erection of sanitary houses in their stead will inure to the benefit of all the people of the community. That incidentally five hundred families will be benefited in a slight degree more than the rest of the community does not of itself constitute a denial of equal protection of the laws. Many municipal enterprises, though used by only a part of the people of the community, are, nevertheless, public property, and have been made in the interest of all the people of the community; for example, jails, poor houses, filtration plants, gas plants and public hospitals."

In *State ex rel. Wayne County Court* v. *Herrald, Commissioner,* 36 W. Va. 721, 15 S. E. 974, this Court held that a county court is a proper relator in a proceeding to enforce its interest in a matter placed by statute within its supervision and control. The act provides that: "The bonds issued pursuant to this article by a county court shall be signed by the president and attested by the clerk of the county court under the seal of the court. ..." The signing, sealing and attesting of the agreement by the respondent, the Clerk of the County Court of Marion County are mere ministerial acts to compel the perform-

ance of which mandamus lies. *State ex rel. Bibb* v. *Chambers, Mayor,* 138 W. Va. 701, 77 S. E. 2d 297, and many decisions of this Court to that effect cited in the opinion of that case.

The prayer of the petition of the relator will be granted and the respondent will be directed to duly attest and to affix the seal of the county court to the lease and industrial bonds referred to herein.

*Writ granted.*