STATE OF WEST VIRGINIA *ex rel.* THE STATE BUILDING
COMMISSION OF WEST VIRGINIA

*v.*

PATRICK CASEY, *Judge*
CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA:
WEST VIRGINIA FEDERATION OF THE BLIND, INC.,
ROBERT L. HUNT, VICTOR GONZALEZ, *and* WEST VIRGINIA
SOCIETY FOR THE BLIND AND SEVERELY DISABLED.

(No. 13776)

Decided February 15, 1977.

*Chauncey H. Browning,* Attorney General, *Cletus B. Hanley,* Deputy Attorney General, *James S. Arnold,* Assistant Attorney General, for relator.

*Barber & DeBolt, Jack W. DeBolt and Robert E. Wise* for respondents.

HARSHBARGER, JUSTICE:

In 1976 the State Building Commission, which had constructed a restaurant facility in the main building of the West Virginia Capitol, received four proposals to operate the restaurant, one of which was from the West Virginia Society for the Blind and Severely Disabled, a corporation. It awarded the contract to one of the other proposers, Waybright Enterprises, Inc.

Circuit Judge Patrick Casey issued an injunction at the request of the other respondents to restrain the Commission from operating a restaurant in the State Capitol building via contract with Waybright Enterprises, Inc. Thereupon the State brought this petition to prohibit enforcement of the injunction.

Judge Casey's injunction was based upon his finding that *W. Va. Code,* 18-10G (1971) forecloses food service in the Capitol by any entity other than respondent West Virginia Society for the Blind and Severely Disabled, a non-profit corporation.

ARTICLE 10G.
PROVIDING OF FOOD SERVICE IN PUBLIC OFFICE BUILDINGS BY THE WEST VIRGINIA SOCIETY FOR THE BLIND AND SEVERELY DISABLED.

§18-10G-1. Policy and purposes; construction of article.

It is hereby declared to be the policy of this State and the purposes of this article to provide

blind and severely disabled persons with the maximum opportunities for remunerative employment and for training for such employment; to enlarge the economic opportunities of the blind and severely disabled; and to stimulate them to greater effort in striving to make themselves self-supporting. This article shall be construed so as to most effectively carry out this policy and to accomplish these purposes. (1971, c. 156.)

§18-10G-2. Definitions.

For the purpose of this article:

(a) "Public office building" shall mean and include the state capitol, all county courthouses, all city and town halls, all buildings used primarily for governmental offices of the State and of any county, city and town within the State, but shall not include public school buildings and buildings of institutions under the jurisdiction of the West Virginia board of regents, the department of health, the department of mental health, the department of natural resources or the commissioner of public institutions.

(b) "Food service" shall mean and include a restaurant, cafeteria, snack bar, vending machine for the dispensing of foods, beverages, confections, tobacco, or other products for human consumption, and other facilities for the sale or providing of goods and services of the types customarily offered in connection with the operation of any of the foregoing: Provided, that the term "food service" shall not include, and there is expressly excepted therefrom, goods and services sold, dispensed, or provided by the veterans administration and the facilities for the sale, dispensing, or providing thereof.

(c) "Society" shall mean the West Virginia society for the blind and severely disabled, a *nonstock corporation*.

(d) "Governmental agency" shall mean and include the State of West Virginia, each instrumen-

tality and agency thereof, and every county, city and town within and every political subdivision of, the State of West Virginia, except county boards of education, the West Virginia board of regents, the department of health, the department of mental health, the department of natural resources or the commissioner of public institutions. (1971, c. 156.)

§18-10G-3. Operation of food service in public office buildings by West Virginia division of vocational rehabilitation; operation of food service by governmental agency in violation of article prohibited.

(a) If a governmental agency proposes operating in a public office building a food service, whether such operation be of a food service in existence on the effective date of this article [June 11, 1971] or be one thereafter to be instituted, the governmental agency, before continuing such existing operation beyond the period of six months immediately following the effective date of this article or before instituting such proposed new operation, shall in writing offer to the society the opportunity to operate such food service in such public office building.

(b) If the society within sixty days from the receipt of the offer mentioned in subsection (a) of this section elects to operate such food service as is mentioned in the offer and if the governmental agency by which such offer shall have been made does not, within such sixty-day period, make the determination of inability mentioned in subsection (d) of this section in the manner prescribed in that subsection, the society may institute and conduct the operation of such proposed food service in such public office building *without the payment of rent or other compensation for the premises occupied by it* in the rendition of such service therein or for the privilege of conducting such operation.

(c) If the society under the authority of subsection (b) of this section shall institute and conduct the operation of such food service as is mentioned therein, the governmental agency shall not during the course of such operation, operate a food service in such public office building or by contract, lease, license, or otherwise, permit any other person, firm, corporation, or agency to do so.

(d) If within sixty days from the receipt by the society of the offer mentioned in subsection (a) of this section, the society shall reject or shall fail to accept the offer, or the governmental agency by which the offer was made shall, in good faith and after a full and thorough study of the relevant circumstances, determine that the society is unable satisfactorily to operate such proposed food service, or the society shall have accepted such offer, but, within the period of six months from such acceptance, shall have failed to institute such food service, such proposed food service may thereupon be provided in such other manner as may be permitted by law, free from the requirements of this article, and if so instituted, the society shall not thereafter, without the express permission of the offering agency, institute such proposed food service in the public office building designated in such offer. If the governmental agency by which such offer shall have been made shall make the determination of inability of the society to operate the proposed food service, the governmental agency shall, within the aforementioned sixty-day period, provide the society with a full written statement of the reasons upon which such determination was predicated, and a food service shall not be operated in such public office building free from the requirements of this article until the written statement mentioned in this subsection shall have first been given.

(e) Notwithstanding any other provisions contained in this article, no governmental agency

shall by reason of the provisions of this article take any action which will result in the violation of the terms of any valid contract, lease or license existing on the effective date hereof [June 11, 1971], nor shall such governmental agency be precluded from extending the period of such an existing contract, lease or license upon the same terms, and with the same contracting parties, as in the contract, lease or license so extended. (1971, c. 156.) (Italics added)

(We note that the title to §18-10G-3 is in part "Operation of food service in public office buildings by West Virginia division of vocational rehabilitation ..." but that no mention of that division is made anywhere in the body of the act.)

The dispositive issue involves the constitutionality of the statute.

"The credit of the State shall not be granted to, or in aid of any county, city, township, corporation or person, nor shall the State ever assume, or become responsible for the debts or liabilities of any county, city, township, corporation or person; nor shall the State ever hereafter become a joint owner, or stockholder in any company or association in this State or elsewhere, formed for any purpose whatever." *West Virginia Constitution*, Article 10, Section 6

All the West Virginia cases that have dealt with Article 10, Section 6, have considered legislation directing payments to persons or corporations for negligent injuries caused by the State's agents or breaches of contract by the State; or have considered acts that sanctioned payments to persons or corporations or political subdivisions from revenue-producing projects, payments that constituted no continuing subsidy obligation by either the State or its sub-governments. *See, State ex rel. County Court of Marion v. Demus*, 148 W. Va. 398, 135 S.E.2d 352 (1964), and the comment in West Virginia Law Review, Volume 67 at 228.

There is no authority upon the proposition we find here, that the Legislature can allow rent-free use of State property by a corporation.

Our Court has defined "credit" in *State ex rel. The City of Charleston v. Sims*, 132 W. Va. 826 at 842, 54 S.E.2d 729 at 738 (1949), "Unquestionably, credit is that which enables one to enter into an obligation to be met in the future, but that is not the only meaning which may be attached thereto. The setting up of a special fund in the State Treasury from which, under statute law, municipalities are told they may draw quarterly during each fiscal year a specified sum ... is, in our opinion, a plain granting of credit ...."

In our opinion, providing space in a building to be used without cost is as much a grant of credit as setting up a fund to be drawn on.

It is obvious that the statute providing for rent-free use of state property by a named private corporation is an unconstitutional grant of the credit of the State to, or in aid of, the corporation.

We have examined state laws—we found forty-three— and the federal statute that extend business opportunity privileges to the blind. None affords those benefits to a corporation. All except West Virginia's make licensing or supervision of the programs the responsibility of health, rehabilitation, educational or welfare departments of government.

The State's duty to assist in the rehabilitation of the blind and other disadvantaged citizens is absolutely unquestioned. *See*, Article 12, Section 12 of our *Constitution*. Its authority to use any of its facilities for these purposes needs no documentation. But it cannot in the name of these good goals extend its facilities rent-free to a private corporation.

We have also examined the corporation charter of the West Virginia Society for the Blind and Severely Dis-

abled. It is a non-stock private corporation with no more than fifty-one regular members and such non-voting associate members as the regular members may elect. Although the holders of the offices of Director of the Division of Vocational Rehabilitation of the State Board of Education, the Supervisor of Services for the Blind and Severely Disabled of the Division of Vocational Rehabilitation, and the Secretary of the State Board of Education, are ex officio members, these officials are clothed with no extra-ordinary authorities within the corporate structure. Their presence does not change the corporation to a public or quasi-public body or make it anything other than a corporation. Neither do the exemplary purposes for which the corporation was formed.

The Court does not consider whether injunction was the proper procedure below because decision on the procedural issue would not finally resolve the dispute and would unnecessarily prolong the litigation.

Nor do we decide the other constitutional issues raised: Is *W. Va. Code*, 18-10G a special act violating Article 6, Section 39 of our *Constitution* and is the underlying action a suit against the State prohibited by Article 6, Section 35. Consideration of these issues is unnecessary to the resolution of the case.

Our conclusion that the statute is unconstitutional precludes its further enforcement by the Circuit Court of Kanawha County.

*Writ awarded.*