I am authorized to state that Judge Caplan joins in this dissent.

State *ex rel.* The County Court of
Brooke County, *A Corporation*
*v.*
Hazel G. Kemp, as Clerk of the County
Court of Brooke County, *A Corporation*

(No. 12623)

Submitted November 15, 1966. Decided December 13, 1966.

*Schmidt, Laas, Schrader & Miller, Thomas B. Miller,* for relator.

*James P. McMullen, Jr.,* for respondent.

CAPLAN, PRESIDENT:

In this original proceeding in mandamus the record reveals that the petitioner, the County Court of Brooke County, at a regular meeting on January 20, 1966, entered an order resolving that it would, upon the completion of negotiations, take such action as is necessary for the issuance of Industrial Development Bonds to finance the acquisition of an industrial plant and equipment to be leased to the Wheeling Corrugating Company, a wholly owned subsidiary of Wheeling Steel Corporation. The petitioner alleges that it was advised of the desire of the Wheeling Steel Corporation to construct a spiral culvert plant on land owned by it at Beech Bottom, Brooke County, which would be operated by the Wheeling Corrugating Company. This plant, including the necessary equipment, would be valued in excess of one million dollars and would employ a number of industrial workers. The County Court of Brooke County was also advised, as demonstrated by an affidavit of William L. Doepken, a Vice President of Wheeling Steel Corporation and President of Wheeling Corrugating Company, which affidavit is attached to the petition as an exhibit, that Wheeling Steel Corporation was without sufficient capital funds to construct the plant and obtain the necessary equipment; that by reason by its expenditure in excess of $165,000,000.00 on a capital improve-

ment program, which program caused interruptions in its operating facilities resulting in marked decreases in capital funds and current assets, it was in need of financial assistance to proceed with the establishment of the proposed plant. Mr. Doepken further said that a proposal had been made by the office of the Governor of Ohio to induce the corporation to construct the proposed plant on property owned by it in that state and that the obtaining of financial assistance was crucial to its decision in relation to the location of the plant.

The petitioner, recognizing the economic benefits to be derived by the location of a new industrial plant in Brooke County and the increase in employment that would result, advised Wheeling Steel Corporation that if it would agree to construct and operate the plant in Brooke County it would offer financial assistance through the use of Industrial Development Bonds to the extent of one million dollars.

Upon being advised by the corporation that under those conditions it would locate its plant in Brooke County, the petitioner adopted the resolution of January 20, 1966, referred to above. Thereafter, Wheeling Steel Corporation informed the County Court that arrangements had been made with the Irving Trust Company, a banking corporation of New York City, to purchase all the Industrial Development Bonds, which were to bear interest at $4\frac{7}{8}$ per cent. Furthermore, it was agreed that the subject property would be leased to Wheeling Steel Corporation, the rental from which would pay the principal and interest on such bonds.

It was the desire of both the County Court and Wheeling Steel to construct the industrial plant and put it into operation as soon as possible. Therefore, it was agreed by the parties that Wheeling Steel should undertake to provide interim financing on a temporary basis to cover the cost of construction and equipment to enable the plant to become operational while the necessary documents for the issue and pur-

chase of the bonds were being prepared and approved by the parties.

Pursuant to that agreement, and with the knowledge and counsel of the County Court, Wheeling Steel proceeded with the construction of the plant. On April 30, 1966, the Wheeling Steel Corporation effected a consolidation with its wholly owned subsidiary, Wheeling Corrugating Company, which was to operate the industrial facility, and so advised the County Court of Brooke County. Subsequently, on June 2, 1966, the County Court adopted a resolution wherein it resolved to continue its financing arrangement with Wheeling Steel. The plant was completed and commenced operation in July, 1966, but despite diligent efforts to expedite the preparation of the documents necessary to consummate the industrial bond issue and sale, such procedure was not completed until early in October, 1966.

On October 22, 1966, the County Court of Brooke County unanimously adopted the resolution which (1) authorized the acquisition of the industrial plant and equipment and the leasing thereof to Wheeling Steel Corporation; (2) authorized the issuance of one million dollars of Industrial Development Bonds, Series A, to finance the cost of acquisition; (3) prescribed the form of mortgage and deed of trust to secure the bonds; and (4) authorized the execution of said lease, mortgage and deed of trust for the security, rights and remedies of the holders of said bonds. Pursuant to that resolution the petitioner, by its president, executed a lease of the industrial plant and equipment to Wheeling Steel Corporation. Also executed by the president, on behalf of the court, was Bond No. 1 of the Brooke County Industrial Development Bonds, Series A. The lease and bond were presented to Hazel G. Kemp, Clerk of the County Court of Brooke County, respondent herein, for the purpose of having the seal of the County Court affixed thereto and attested. The respondent, being advised by counsel that there may be a question as to the validity of this acquisition

under the Industrial Development Bond Act, declined to affix the seal of the County Court to the lease and bond.

Upon the respondent's continued refusal to affix the County Court's seal to the lease and bond, the petitioner instituted a mandamus action in this Court seeking a writ commanding the respondent to so act. A rule to show cause why the writ should not be granted was issued on October 31, 1966, and was made returnable November 5, 1966. On the return day the matter was submitted for decision upon the petition, with its exhibits, the demurrer and answer of the respondent, and upon the briefs and oral arguments of counsel for the respective parties.

The constitutionality of Ch. 13, Art. 2C, Code, 1931, as amended, known as the Industrial Development Bond Act, having been determined and upheld in *State ex rel. County Court of Marion County v. Demus,* 148 W. Va. 398, 135 S. E. 2d 352, and in *State ex rel. County Court of Mineral County v. Bane,* 148 W. Va. 392, 135 S. E. 2d 349, the only issue to be resolved in this proceeding is whether the proposed acquisition, through the issuance of Industrial Development Bonds, is permissible under the provisions of the foregoing statute. Specifically, the respondent takes the position that Ch. 13, Art. 2C does not authorize a county court to issue bonds for financing the acquisition of an existing industrial facility.

In resolving the narrow issue presented in this case it is essential to consider the circumstances under which the acquisition of the industrial plant is proposed. Also, we must examine the pertinent provisions of Ch. 13, Art. 2C. Section 2 thereof declares as a matter of legislative finding that the lack of employment and business opportunities in many areas of this state has created a critically adverse condition; that the development of new commercial, industrial and manufacturing plants is essential to relieve such condition; that the health, happiness, safety, right of

gainful employment and general welfare will be promoted by the establishment of industrial plants; "and that the means and measures herein authorized for the promotion of industrial plants are as a matter of public policy, for the public purpose of the several counties, municipalities and the State of West Virginia."

The County Court of Brooke County, the petitioner herein, has made a finding that the acquisition of the spiral culvert plant, in the circumstances detailed above, would create additional employment and would, therefore, inure to the benefit of the public. This finding is clearly within the expressed legislative intent and, in the absence of fraud, collusion or bad faith, the wisdom of such finding can not be questioned. See *State ex rel. County Court of Marion County v. Demus,* 148 W. Va. 398, 135 S. E. 2d 352; *LaFollette v. City of Fairmont,* 138 W. Va. 517, 76 S. E. 2d 572; *Brouzas v. City of Morgantown,* 144 W. Va. 1, 106 S. E. 2d 244.

Although the respondent questions the authority of the County Court to acquire an existing plant through the issuance of Industrial Development Bonds, she admits that the statute contains certain language which would permit such acquisition. Ch. 13, Art. 2C, Sec. 4 of Code, 1931, as amended, provides that a county, through its governing body, shall have the following powers:

"(1) To acquire, whether by purchase, construction, or gift, one or more industrial plants, or additions thereto, which shall be located within this State; (2) to lease to others any or all of its industrial plants for such rentals and upon such terms and conditions as the governing body may deem advisable and such governmental body may grant unto its lessee an option to purchase said industrial plant, at the expiration of the term of said lease, upon such terms as may be agreed upon; (3) to issue revenue bonds for the purpose

of defraying the cost of acquiring, by construction and purchase, or by either, an industrial plant, or an addition, extension, or improvement thereto, and to secure the payment of such bonds, all as hereinafter provided; and (4) to issue and deliver revenue bonds in exchange for an industrial plant.''

We believe, and so hold, that the above enumerated powers of the county court unequivocally permit the acquisition of an existing industrial facility through the issuance of Industrial Development Bonds so long as such acquisition promotes the public welfare as prescribed by the legislature in Ch. 13, Art. 2C, Sec. 2, Code, 1931, as amended.

In support of her position, the respondent cites *Manning v. Fiscal Court of Jefferson County* (Ky.), 405 S. W. 2d 755. In that case the Jefferson County Fiscal Court adopted a resolution providing for the acquisition by purchase of an industrial plant, with machinery and equipment, and leasing it to a truck equipment company. Revenue bonds would be issued to finance the acquisition, and the rentals during the original term of the lease would be sufficient to amortize the bonds. In the *Manning* case the plant proposed to be acquired was owned by, and would be purchased from, the company to which it thereafter would be leased. The trial court, assuming that this method of financing influenced the truck equipment company to locate in Jefferson County, approved the action of the Jefferson County Fiscal Court.

The Court of Appeals of Kentucky reversed the lower court, holding that no public purpose was served. It said: ''* * * the only evidence in the record was that Fontaine would stay in Jefferson County and operate the plant even without the revenue bond financing, and that the proposed revenue bond financing plan 'had no influence on his being here.' ''

We are in agreement with the *Manning* case but, on

its facts, find it readily distinguishable from the case at bar. In the *Manning* case the evidence revealed that the Fiscal Court had held out no promise or assurance to Fontaine, the owner of the truck equipment company, that revenue bonds would be issued to finance the project; that the site was purchased by Fontaine a year before the Fiscal Court ever heard of him; that it appeared that Fontaine would establish and operate the plant even if the revenue bond project did not materialize; and that the action of the Fiscal Court really had no influence on locating the plant in Jefferson County. The Court concluded that the practical effect of issuing the revenue bonds would be simply to substitute public financing for private financing of an existing industrial venture.

The circumstances in the instant case are entirely different. Here, the undisputed evidence reveals that Wheeling Steel established the plant with interim financing entirely on the promise and agreement of the County Court of Brooke County to furnish financial assistance through the acquisition of the property by issuance of Industrial Development Bonds and the subsequent leasing of such property to it. By its official acts of January 20, 1966, and June 2, 1966, the petitioner influenced Wheeling Steel to locate its plant in Brooke County. There is nothing in the record to show that this plant would have been so located if the petitioner had not entered into this financing arrangement. In fact, if this method had not been employed, Wheeling Steel may have established this operation in Ohio.

We are of the opinion, therefore, that in the circumstances of this case the petitioner's acts are within the purview of the provisions of Ch. 13, Art. 2C, Code, 1931, as amended. A clear legal right to the relief sought having been shown, the writ of mandamus is awarded.

*Writ awarded.*