THE STATE OF WEST VIRGINIA *ex rel.* THE WEST VIRGINIA HOUSING DEVELOPMENT FUND, A PUBLIC CORPORATION OF THE STATE OF WEST VIRGINIA

*v.*

JOHN T. COPENHAVER, JR., AS CHAIRMAN OF THE BOARD OF DIRECTORS OF THE WEST VIRGINIA HOUSING DEVELOPMENT FUND, A PUBLIC CORPORATION OF THE STATE OF WEST VIRGINIA

(No. 12882)

Submitted November 18, 1969. Decided December 9, 1969.

*Jackson, Kelly, Holt & O'Farrell, James K. Brown, John R. Lukens; Mudge, Rose, Guthrie & Alexander, Robert E. Ferdon, John F. Kelly,* for relator.

*Stone, Bowles, Kauffelt & McDavid, Paul N. Bowles, Charles M. Love, III,* for respondent.

CALHOUN, JUDGE:

In this mandamus proceeding instituted in this Court pursuant to its original jurisdiction in cases of that character, The West Virginia Housing Development Fund, a public corporation, which hereafter in this opinion may be referred to merely as the Fund or as the petitioner, seeks to require the respondent, John T. Copenhaver, Jr., as chairman of the board of directors of the Fund, to execute in behalf of the Fund certain contracts in writing. The case was submitted to this Court for decision upon the mandamus petition, together with various exhibits attached to and made a part of the petition; upon an answer and a demurrer to the petition filed by and in behalf of the respondent; and upon briefs in writing and oral argument of counsel for the respective parties.

The case involves no disputed question of fact. The demurrer and answer present certain constitutional questions for decision, which constitutional questions will be stated hereafter in this opinion.

It is conceded that, if the constitutional questions are decided adversely to the respondent, he has a mandatory, nondiscretionary duty to execute the contracts in question and that, under prior decisions of this Court, including *State ex rel. Greenbrier County Airport Authority* v. *Hanna,* 151 W. Va. 479, 153 S. E.2d 284, mandamus is a proper proceeding by which to present the case to this Court for decision.

Chapter 5 of the Acts of the Legislature, Second Extraordinary Session, 1968, as amended by Chapter 5, Acts of the Legislature, First Extraordinary Session, 1969, amended Chapter 31, Code, 1931, as amended, by adding thereto Article 18, to be known as The West Virginia Housing Development Fund Act, which hereafter in this opinion may be referred to merely as the Act, by which

there was created and established a governmental instrumentality of this state to be known as The West Virginia Housing Development Fund, the petitioner in this case, "to serve a public corporate purpose and to act for the public benefit and as a governmental instrumentality of the State of West Virginia, to act on behalf of the state and its people in improving and otherwise promoting their health, welfare and prosperity." The basic purpose of the creation of the Fund is stated more specifically in Section 6 of the Act as follows:

(1) To make or participate in the making of federally insured construction loans to sponsors of land development for residential housing for occupancy by persons or families of low and moderate income or residential housing for occupancy by persons or families of low and moderate income who are eligible or potentially eligible for federally insured mortgages or federal mortgages. Such loans shall be made only upon determination by the housing development fund that construction loans are not otherwise available, wholly or in part, from private lenders upon reasonably equivalent terms and conditions;

(2) To make temporary loans, with or without interest, but with such security for repayment as the housing development fund determines reasonably necessary and practicable, from the operating loan fund, if created, established, organized and operated in accordance with the provisions of section nineteen of this article, to defray development costs to sponsors of land development for residential housing for occupancy by persons and families of low and moderate income or residential housing construction for occupancy by persons and families of low and moderate income who are eligible or potentially eligible for federally insured construction loans, federally insured mortgages or federal mortgages;

\* \* \*

(18) To borrow money to carry out and effectuate its corporate purpose and to issue its negotiable bonds or notes as evidence of any such borrowing in such principal amounts and upon

such terms as shall be necessary to provide sufficient funds for achieving its corporate purpose, except that no negotiable bonds or notes shall be issued to mature more than ten years from date of issuance, and except that the amount borrowed and evidenced by the issuance of its negotiable bonds shall not exceed the amount reasonably estimated at the time of the issuance of such negotiable bonds to be required for the purpose of making federally insured construction loans for a period of two years;

(19) To issue renewal notes, to issue bonds to pay notes and, whenever it deems refunding expedient, to refund any bonds by the issuance of new bonds, whether the bonds to be refunded have or have not matured except that no such renewal notes or refunding bonds shall be issued to mature more than ten years from date of issuance;

(20) To apply the proceeds from the sale of renewal notes or refunding bonds to the purchase, redemption, or payment of the notes or bonds to be refunded;

(21) To provide technical services to assist in the planning, processing, design, construction or rehabilitation of residential housing for occupancy by persons and families of low and moderate income or land development for residential housing for occupancy by persons and families of low and moderate income;

(22) To provide consultative project assistance services for residential housing for occupancy by persons and families of low and moderate income and for land development for residential housing for occupancy by persons and families of low and moderate income, and for the residents thereof with respect to management, training and social services;

\* \* \*.

(24) To participate in the making of or to make loans to qualified federally approved mortgagees and in connection therewith to take as collateral security, invest in, purchase, acquire, sell or participate in the sale of, or take assign-

ments of, notes and mortgages evidencing loans for the construction, rehabilitation, purchase, or refinancing of housing for persons and families of low and moderate income in this State: Provided, that the fund shall obtain such written assurances as shall be satisfactory to it that the proceeds of such loans will be used, as nearly as practicable, for investment in federally insured construction loans for low and moderate income housing in this State or that other moneys in an amount approximately equal to such proceeds shall be committed and used for such purpose.

The Act provides that the Fund shall be governed by a board of directors consisting of eleven members, four of whom shall be the attorney general, the secretary of state, the state treasurer and the commissioner of commerce, as public directors; and seven additional members to be chosen from the general public, as private directors, appointed by the governor with the advice and consent of the senate. The chairman of the board of directors shall be designated by the governor from among the private directors appointed. John T. Copenhaver, Jr., the respondent in this mandamus proceeding, has been duly designated by the governor as chairman of the board. The Act further provides that six members of the board of directors shall constitute a quorum and no action shall be taken by the board except upon the affirmative vote of at least six of the directors; that the management and control of the housing development fund shall be vested solely in the board of directors; and that the chairman of the board shall be the chief executive officer of the housing development fund.

Section 14 is as follows: "The State of West Virginia shall not be liable on notes, bonds or other evidences of indebtedness of the housing development fund and such notes, bonds or other evidences of indebtedness shall not be a debt of the State of West Virginia, and such notes, bonds or other evidences of indebtedness shall contain on the face thereof a statement to such effect." While the demurrer and answer assert that the

issuance of bonds or notes by the Fund would constitute a grant of the credit of the state in violation of Article X, Section 6 of the Constitution of West Virginia, this point of the demurrer has been abandoned and counsel for the respondent conceded in oral argument, and the Court holds, that the Act is not unconstitutional in this respect. See *Guaranty Trust Company of New York* v. *West Virginia Turnpike Commission,* 144 W. Va. 266, 274, 107 S. E.2d 792, 797.

At a meeting of the board of directors of the Fund duly and regularly called and held on September 25, 1969, there was adopted a resolution, the chairman of the board abstaining from voting thereon, by which resolution the board evidenced its consideration of certain loans proposed to be made by the Fund; made certain findings with respect thereto; and authorized, empowered and directed the respondent, John T. Copenhaver, Jr., as chairman of the board and chief executive officer of the Fund, to execute, as the corporate acts of the Fund, certain contracts respecting the proposed loans, which contracts were specifically described in the resolution. The proposed contracts are described in the petition as follows:

> The proposed contracts described in said resolution and which respondent was authorized and directed to execute by said resolution are: (i) a 'Sponsor Project Loan Construction Loan Agreement' between Fund and The Cedar Grove Methodist Housing, Inc., as sponsor of the 'Cedar Grove Apartments' project for fifty units of multiple family housing to be situate in the Town of Cedar Grove, Kanawha County, West Virginia, pursuant to Section 221 (d) (3) of the National Housing Act for occupancy by persons and families of low and moderate income; (ii) a 'Sponsor Project Loan Construction Loan Agreement' between Fund and Princeton Area Business Development Corp. as sponsor of the 'Princeton Housing Site #1' and 'Princeton Housing Site #2' projects for one hundred units of multiple family housing to be situate in the City of Prince-

ton, Mercer County, West Virginia, pursuant to Section 221 (d) (3) of the National Housing Act for occupancy by persons and families of low and moderate income; (iii) a 'Qualified Federally Approved Mortgagee Loan Agreement' between Fund and Thomas & Hill, Inc., a qualified federally approved mortgagee; and (iv) a 'Qualified Federally Approved Mortgagee Loan Agreement' between Fund and Home Mortgages, Inc., a qualified federally approved mortgagee.

The mandamus petition alleges: "Petitioner is informed and believes that if said contracts are executed by Fund and delivered to the other parties thereto, the other parties thereto will then execute the same." The petition contains the following additional allegation:

In the said resolution, the Board of Directors of the Fund found and determined, among other things, that there was a critical need for additional sanitary, decent and safe residential housing for low and moderate income persons and families in the areas where housing is proposed to be constructed under the aforesaid projects; and that the aforesaid projects qualified as residential housing for persons and families of low and moderate income irrespective of race, creed, national origin or sex, as defined in the Act. The Board of Directors of the Fund also found and determined that Thomas & Hill, Inc., and Home Mortgages, Inc., were qualified federally approved mortgagees for the purpose of the Act and were in a position to and were willing to utilize loans made to them and each of them by the Fund and to utilize other funds which would be released for such purposes by loans being made to them by the Fund, to make federally insured construction loans for the construction in the State of West Virginia of residential housing for persons and families of low and moderate income as defined in the Act in all respects in compliance with the Act, which housing, without such loans by Fund, either would not be constructed as needed or would not be constructed at a cost which would as adequately serve such needs of the people of the State of West Virginia.

In his answer, the respondent states that he believes "that the health and welfare of the people of West Virginia will be promoted materially by the making and carrying out of the transactions approved by the resolution of the Board of Directors of The West Virginia Housing Development Fund * * * but because he is informed and believes that said transactions are or may be unlawful", on the basis of the constitutional questions raised by the demurrer and the answer, "he refuses to execute the contracts approved by said resolution until the constitutionality of the Act and the lawfulness of the transactions and contracts under the Act shall be finally adjudicated by a Court of competent jurisdiction."

The primary question presented for decision, referred to by counsel for the respondent in their brief as "the keystone issue in the case", is the contention that The West Virginia Housing Development Fund is not a public corporation formed and existing for public purposes, and that consequently it is invalid under the provisions of Section 1 of Article XI of the Constitution of West Virginia, which constitutional provision includes the following language: "The legislature shall provide for the organization of all corporations hereafter to be created, by general laws, uniform as to the class to which they relate; but no corporation shall be created by special law: * * *." This Court has held that the language of the constitutional provision quoted immediately above applies only to private corporations and not to public corporations created for public purposes. *State ex rel. McMillion* v. *Stahl,* 141 W. Va. 233, 243, 89 S. E.2d 693, 700; *Meisel* v. *Tri-State Airport Authority,* 135 W. Va. 528, 540, 64 S. E.2d 32, 39; *Sims* v. *Fisher,* 125 W. Va. 512, 538, 25 S. E.2d 216, 228.

By his answer and demurrer, the respondent asserts that if The West Virginia Housing Development Fund is not a public corporation, the issuance of bonds, or notes by it would not be for a public purpose and that the

issuance of such bonds or notes would violate Section 6 of Article X of the Constitution of West Virginia which constitutional provision is in part as follows: "The credit of the State shall not be granted to, or in aid of any county, city, township, corporation or person; nor shall the State ever assume, or become responsible for the debts or liabilities of any county, city, township, corporation or person; * * *." By his answer and demurrer, the respondent further asserts that if the Fund is not a public corporation created for public purposes, the appropriation of money to the Fund by the legislature would be in violation of the constitutional provision quoted immediately above. By his answer and demurrer, the respondent further asserts that, if the Fund is not a public corporation created for public purposes, the provision of Section 18 of the Act, which exempts from taxation the bonds and notes issued by the Fund, including interest thereon, and the property and revenues of the Fund, is in violation of Section 1 of Article X of the Constitution of West Virginia which provides, generally speaking, that, subject to certain exceptions therein stated, "all property, both real and personal, shall be taxed * * *." It is conceded in the brief of counsel for the respondent that all constitutional questions referred to in this paragraph must be decided against the contentions of the respondent if the Court determines that The West Virginia Housing Development Fund is a public corporation created and existing for public purposes and therefore not violative of the provisions of Section 1 of Article XI of the Constitution of West Virginia. This is, therefore, as stated by counsel for the respondent, "the keystone issue in the case." In addition to this primary, pivotal question, the respondent, by his answer and demurrer, asserts that Subsection (8) of Section 3 of the Act constitutes an unlawful delegation to the Fund of legislative powers in contravention of the provisions of Section 1 of Article VI of the Constitution of West Virginia, to the extent that the Act authorizes the Fund to determine what persons and families are

eligible for such assistance as is made available by the Act.

In approaching a consideration of the constitutional questions presented for decision in this case, we bear in mind the limitations on the authority of a court to declare that a legislative enactment is unconstitutional. *State ex rel. Metz* v. *Bailey,* 152 W. Va. 53, 159 S. E.2d 673; *Willis* v. *O'Brien,* 151 W. Va. 628, pt. 3 syl., 153 S. E. 2d 178; *State ex rel. Appalachian Power Company* v. *Gainer,* 149 W. Va. 740, pt. 1 syl., 143 S. E.2d 351.

As a basis for the Act here under consideration, the legislature made the following findings of fact and declarations of legislative purpose in Section 2 of the Act:

(a) The legislature hereby finds and declares that as a result of public actions involving highways, public facilities, flood control projects, and urban renewal activities, and as a result of the spread of slum conditions and blight to formerly sound urban and rural neighborhoods, there exists in the State of West Virginia a serious shortage of sanitary, decent and safe residential housing available at low prices or rentals to persons and families of low and moderate income. This shortage is severe in certain urban areas of the State, is especially critical in the rural areas of West Virginia, and is inimical to the health, welfare and prosperity of all residents of the State and to the sound growth of West Virginia communities.

(b) The legislature hereby finds and declares further that private enterprise and investment have not been able to produce, without assistance, the needed construction of sanitary, decent and safe residential housing at low prices or rentals which persons and families of low and moderate income can afford, or to achieve the urgently needed rehabilitation of much of the present low and moderate income housing stock. It is imperative that the supply of residential housing for persons and families displaced by public actions or natural disaster be increased; and that private enterprise and investment be encouraged both to sponsor land development for residential housing

for such persons and families and to sponsor, build and rehabilitate residential housing for such persons and families, to help prevent the recurrence of slum conditions and blight and assist in their permanent elimination throughout West Virginia.

(c) The legislature hereby finds and declares further that its intention by enacting this legislation is to provide for the creation and establishment of the West Virginia housing development fund, the corporate purpose of which is to provide temporary financing for development costs, land development and residential housing construction to public and private sponsors of land development for residential housing or residential housing, new or rehabilitated, for sale or rental to persons and families of low and moderate income; further to provide technical, consultative and project assistance services to public and private sponsors of such land development or residential housing; further to increase the construction of low and moderate income housing through the purchase or investment in long-term federal mortgages or federally insured mortgages on housing for persons and families of low and moderate income constructed in this State thereby increasing the supply of long-term mortgage financing and freeing funds available therefor for use in short-term construction financing; and finally to assist in coordinating federal, state, regional and local public and private efforts and resources to otherwise increase the supply of such residential housing.

(d) The legislature hereby finds and declares further that in accomplishing this purpose, the West Virginia housing development fund, created and established by this article, is acting in all respects for the benefit of the people of the State of West Virginia to serve a public purpose in improving and otherwise promoting their health, welfare and prosperity, and that the West Virginia housing development fund, so created and established, is empowered, hereby, to act on behalf of the State of West Virginia and its people in serving this public purpose for the benefit of the general public.

Legislative findings of fact which are made the basis of a legislative act are not thereafter open to judicial investigation. *State ex rel. The County Court of Brooke County* v. *Kemp,* 151 W. Va. 349, 354, 151 S. E.2d 680, 683; *State ex rel. Appalachian Power Co.* v. *Gainer,* 149 W. Va. 740, 750, 143 S. E.2d 351, 359; *Brouzas* v. *The City of Morgantown,* 144 W. Va. 1, 12-13, 106 S. E.2d 244, 250-51; *La Follette* v. *The City of Fairmont,* 138 W. Va. 517, pt. 3 syl., 76 S. E.2d 572; 16 Am. Jur.2d, Constitutional Law, Sections 170 and 171, pages 386-389.

Section 4 of the Act creates the Fund "as a governmental instrumentality of the State of West Virginia, a public body corporate * * *." It is clear that the Fund is a public corporation. Considering the legislative findings and declarations of purpose previously quoted, and considering the Act in its entirety, we are of the opinion that the Fund, a public corporation, was created for public purposes and that, therefore, it is not violative of the provisions of Section 1 of Article XI of the Constitution of West Virginia. In this connection, we consider quite pertinent and persuasive *Chapman* v. *The Huntington, West Virginia, Housing Authority,* 121 W. Va. 319, 3 S. E. 2d 502, and particularly the second, third and fourth points of the Court's syllabus of that case which are as follows:

2. The West Virginia Housing Act has as its primary purpose slum clearance and incidentally and auxiliary thereto, low-cost housing.

3. Slum clearance and low-cost housing incidental thereto, under the provisions of the West Virginia Housing Act, are within the police power of the legislature and are for a public purpose.

4. The factual finding of a city council to the effect that slum areas exist within the city is entitled to great respect and is not subject to attack unless clearly wrong.

In other cases this Court has held that acts of the legislature were enacted to subserve public purposes and that such acts were not in this respect unconstitutional.

*State ex rel. County Court of Marion County* v. *Demus,* 148 W. Va. 398, 135 S. E.2d 352; *State ex rel. McMillion* v. *Stahl,* 141 W. Va. 233, 89 S. E.2d 693; *State ex rel. Board of Governors of West Virginia University* v. *Sims,* 140 W. Va. 64, 82 S. E.2d 321; *Meisel* v. *Tri-State Airport Authority,* 135 W. Va. 528, 64 S. E.2d 32, *State ex rel. The West Virginia Board of Aeronautics* v. *Sims,* 129 W. Va. 694, 41 S. E.2d 506; *Kenny* v. *County Court of Webster County,* 124 W. Va. 519, 21 S. E.2d 385.

Counsel for the respondent assert that the Act is invalid because it involves an unconstitutional delegation of legislative power to the Fund in violation of Section 1 of Article VI of the Constitution of West Virginia which contains the following sentence: "The legislative power shall be vested in a senate and house of delegates." In opposing this contention, the petitioner places reliance upon *Chapman* v. *The Huntington, West Virginia, Housing Authority,* 121 W. Va. 319, 3 S. E.2d 502, and particularly upon the eighth point of the syllabus by the Court in that case, which is as follows: "The delegation by the legislature of broad discretionary powers to an administrative body, accompanied by fitting standards for their exercise, is not of itself unconstitutional." See also *State* v. *Bunner,* 126 W. Va. 280, pt. 1 syl., 27 S. E.2d 823; *West Central Producers Co-Operative Association* v. *Commissioner of Agriculture,* 124 W. Va. 81, 20 S. E.2d 797; *Rinehart* v. *Woodford Flying Service, Inc.,* 122 W. Va. 392, 9 S. E.2d 521; *J. W. Hampton, Jr., & Company* v. *United States,* 276 U. S. 394; 16 C.J.S., Constitutional Law, Section 138, page 570. "The legislature may delegate its nonlegislative functions and confer discretion in the administration of the law, but it may not delegate purely legislative powers in the absence of constitutional authorization." 16 C.J.S., Constitutional Law, Section 133, page 552. "As has already been indicated, the rule of nondelegability is applicable to legislative powers only; * * *. Thus, the rule is that in order that a court may be justified in holding a statute unconstitutional as a delegation of legislative power, it must appear that the

power involved is purely legislative in nature—that is, one appertaining exclusively to the legislative department. * * *. Purely legislative power, which can never be delegated, has been described as the authority to make a complete law—complete as to the time when it shall take effect and as to whom it shall be applicable—and to determine the expediency of its enactment." 16 Am. Jur. 2d, Constitutional Law, Section 242, pages 493-94.

The legislature enacted the law here in question and has not delegated to the Fund any purely legislative authority. It has, perhaps as a matter of absolute necessity, clothed the Fund with a power and duty, in a limited area, to exercise a degree of discretion or judgment in determining who are "persons and families of low and moderate income." The legislature has not failed to set forth guidelines or standards to guide the Fund in the exercise of its judgment or discretion in this limited area. We note that the phrase "low and moderate income" is used conjunctively rather than disjunctively. By legislative definition "persons and families of low and moderate income" are encompassed in a single definition embraced in Section 3 (8) as follows:

    8. 'Persons and families of low and moderate income' means persons and families, irrespective of race, creed, national origin or sex, determined by the housing development fund to require such assistance as is made available by this article on account of personal or family income not sufficient to afford sanitary, decent and safe housing, and to be eligible or potentially eligible to occupy residential housing constructed and financed, wholly or in part, with federally insured construction loans, federally insured mortgages, federal mortgages or with other public or private assistance, and in making such determination the fund shall take into account the following: (a) The amount of the total income of such persons and families available for housing needs, (b) the size of the family, (c) the cost and condition of housing facilities available, (d) the eligibility of such persons and families for federal housing

assistance of any type predicated upon a low or moderate income basis, and (e) the ability of such persons and families to compete successfully in the normal housing market and to pay the amounts at which private enterprise is providing sanitary, decent and safe housing;

*Massachusetts Housing Finance Agency* v. *New England Merchants National Bank of Boston*, 249 N. E.2d 599 (Mass. 1969) is, we believe, pertinent and persuasive authority in support of most of the views previously expressed herein by this Court.

For reasons stated in this opinion, the Court holds that the Act is not unconstitutional in any of the particulars asserted in the answer and demurrer; that the respondent has a mandatory, nondiscretionary duty to execute the contracts in question for and in behalf of the Fund; and, accordingly, the writ of mandamus prayed for is awarded.

*Writ awarded.*