452 S.E.2d 906

STATE of West Virginia ex rel. David F. LAMBERT, in his Official Capacity as Director of the West Virginia Public Employees Insurance Agency, Petitioner,

v.

The COUNTY COMMISSION OF BOONE COUNTY, et al., Respondents,

The Cities and Towns of Ravenswood, Lewisburg, et al., Intervenors.

No. 22371.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 14, 1994.

Decided Dec. 9, 1994.

452

Darrell V. McGraw, Jr., Atty. Gen., Donald L. Darling, Sr. Deputy Atty. Gen., Charleston, for David P. Lambert.

Dennis R. Vaughan, Jr., Vaughan & Withrow, Charleston, for The County Com'n of Boone County, The County Com'n of Braxton County, The County Com'n of Kanawha County, The County Com'n of McDowell County, The County Com'n of Raleigh Coun-

ty, The Hurricane Water Bd., The Hurricane Sewer Bd., The City of Buckhannon, The City of Beckley, The Buckhannon Waste Collection Bd., The City of Summersville; and Intervenors, The Cities and Towns of Ravenswood, Lewisburg, Wellsburg, Grafton and Bridgeport.

J.W. Feuchtenberger, Stone, McGhee, Feuchtenberger & Barringer, Bluefield, for The City of Bluefield.

John F. McCuskey, Campbell, Woods, Bagley, Emerson, McNeer & Herndon, Charleston, for Prestera Center for Mental Health Services and Valley Comprehensive Health Center.

Edward M. Kowal, Jr., Campbell, Woods, Bagley, Emerson, McNeer & Herndon, Huntington, for Green Acres Regional Center, Inc.

McHUGH, Justice:

The petitioner, David Lambert, who is the Director of the Public Employees Insurance Agency (hereinafter "PEIA"), is seeking a writ of mandamus to compel the respondents, who are various city or county government authorities or non-profit corporations, who have elected to not participate in PEIA,[1] to contribute to the cost of coverage for their retired employees who have elected PEIA coverage. For reasons stated below, we grant a writ of mandamus.

I

The question arises as to whether the respondents, who have employees who received PEIA benefits, should contribute to PEIA. In order to resolve this issue it is necessary to understand the relationship of the respondents to the Public Employees Retirement System (hereinafter "PERS") and PEIA.

All of the respondents have elected not to participate in PEIA pursuant to *W.Va.Code,* 5–16–22 [1992] which states, in relevant part:

The provisions of this article shall not be mandatory upon any employee or employer who is not an employee of or is not the state of West Virginia, its boards, agencies, commissions, departments, institutions or spending units or a county board of education, and nothing contained in this article shall be construed so as to compel any employee or employer to enroll in or subscribe to any insurance plan authorized by the provisions of this article.

However, all of the respondents, regardless of whether they are city or county government authorities or non-profit corporations, have elected to participate in PERS, which is set forth in the West Virginia Public Employees Retirement Act found in *W.Va.Code,* 5–10–1, *et seq.* As the petitioner points out, the respondents' participation in PERS is a voluntary act. *See W.Va.Code,* 5–10–2(4) [1988] and 5–10–16 [1961].

One of the benefits accorded to the respondents, because of their participation in PERS, is that the respondents' employees are eligible to elect PEIA coverage upon their retirement. The authorization for this benefit is in The West Virginia Public Employees Insurance Act found in *W.Va.Code,* 5–16–1, *et seq.* Specifically, *W.Va.Code,* 5–16–10 [1992], in relevant part, authorizes PEIA to provide coverage for retired employees and their spouses and dependents:

Any contract or contracts entered into hereunder may provide for group hospital and surgical, group major medical, group prescription drug and group life and accidental death insurance for retired employees and their spouses and dependents as defined by rules and regulations of the public employees insurance agency, and on such terms as the director may deem appropriate.

Additionally, *W.Va.Code,* 5–16–24 [1992] states, in relevant part, that the director of

---

1. The respondents are the County Commission of Boone County, the County Commission of Braxton County, the County Commission of Kanawha County, the County Commission of McDowell County, the County Commission of Raleigh County, the Hurricane Water Board, the Hurricane Sewer Board, the City of Buckhannon, the City of Beckley, the City of Bluefield, the Buck-hannon Waste Collection Board, the City of Summersville, the Housing Authority of Keyser, Prestera Center for Mental Health Services, Green Acres Regional Center, Inc. and Valley Comprehensive Mental Health Center.

 This Court granted the Cities and Towns of Ravenswood, Lewisburg, Wellsburg, Grafton and Bridgeport's motion to intervene in this action.

PEIA shall promulgate rules and regulations which are necessary for the administration of the West Virginia Public Employees Insurance Act and that

> [s]uch regulations shall provide that any employee of the state who has been compelled or required by law to retire before reaching the age of sixty-five years shall be eligible to participate in the public employees' health insurance program.... Any employee who voluntarily retires, as provided by law, shall be eligible to participate in the public employees' health insurance program[.]

Finally, the legislature defined retired employees under the West Virginia Public Employees Insurance Act to include employees who are eligible for the state retirement system:

> 'Retired employee' shall mean an employee of the state who retired after the twenty-ninth day of April, one thousand nine hundred seventy-one, and an employee of the university of West Virginia board of trustees or the board of directors of the state college system or a county board of education who retired on or after the twenty-first day of April, one thousand nine hundred seventy-two, and *all additional eligible employees who retire on or after the effective date of this article and meet the minimum eligibility requirements for their respective state retirement system*[.]

*W.Va.Code*, 5–16–2(7) [1990], in relevant part (emphasis added).

All of the above statutes may have been enacted without much thought being given as to how these benefits were to be paid. It is obvious from the record that some retired employees, whose employers were not contributing to PEIA, were electing to participate in PEIA. Therefore, the employers, who elected to participate and were paying for PEIA coverage, were having to bear the costs of medical coverage for these retired employees as well as their own. As medical costs have increased, the employers paying for the retired employees' PEIA coverage would be carrying more than their fair share. In order to rectify this problem the legislature amended *W.Va.Code*, 5–16–22 in 1992 to state, in relevant part, that employers of retired employees who elect PEIA coverage must make a contribution to PEIA whether or not the employer participates in PEIA:

> *Any employer, whether such employer participates in the public employees insurance agency insurance program as a group or not, which has retired employees,* their dependents, or surviving dependents of deceased retired employees who participate in the public employees insurance agency insurance program as authorized by this article, *shall pay to the agency the same contribution toward the cost of coverage for its retired employees,* their dependents, or surviving dependents of deceased retired employees as the state of West Virginia, its boards, agencies, commissions, departments, institutions, spending units, or a county board of education pay for their retired employees, their dependents, and surviving dependents of deceased retired employees, *as determined by the finance board.* Each employer is hereby authorized and required to budget for and make such payments.

(emphasis added).

Pursuant to *W.Va.Code*, 5–16–22 [1992], Sally K. Richardson, the director of PEIA, advised the respondents by a letter dated January 7, 1993, that PEIA would begin billing them monthly in July of 1993 for their contributions for their retired employees and/or eligible dependents who elected PEIA coverage. Each of the respondents has at least one retired employee and/or eligible dependent who elected PEIA coverage. The respondents have failed to make any contributions to PEIA stating that they chose not to participate in PEIA. The petitioner requests that this Court issue a writ of mandamus to compel the respondents to make the contributions required under *W.Va.Code*, 5–16–22 [1992], since it is the respondents' participation in PERS which makes their retired employee eligible for PEIA benefits. Therefore, this Court must reconcile the benefits provided to the respondents under the two programs: PEIA and PERS.

## II

There are six issues which the parties raise. The first issue is whether the statutes

governing PERS should be read *in pari materia* with the PEIA statutes so that if an employer elects to participate in PERS, then the employer should contribute towards the cost of PEIA coverage if its retired employee, who participates in PERS, elects to participate in PEIA. We find that the statutes governing PERS should be read *in pari materia* with the PEIA statutes.

The respondents argue that since *W.Va. Code*, 5–16–22 [1992] is entitled "Permissive participation; exemption" they should not have to make a contribution to PEIA since they have not elected to participate in PEIA. The respondents further point out that *W.Va. Code*, 5–16–22 [1992] specifically states that their participation in PEIA is not mandatory, although *W.Va.Code*, 5–16–22 [1992] does provide them with the option of participating in PEIA.

The weakness of the respondents' argument is that they each elected to participate in PERS and it is by virtue of their participation in PERS that their retired employee has the option of electing to participate in PEIA. The West Virginia Public Employees Insurance Act encompasses retired employees in PERS. *See W.Va.Code*, 5–16–2(7) [1990]. Therefore, it must be read with the West Virginia Public Employees Retirement Act.

■ As this Court has stated in syllabus point 5 of *Fruehauf Corp. v. Huntington Moving & Storage Co.*, 159 W.Va. 14, 217 S.E.2d 907 (1975):

Statutes which relate to the same persons or things, or to the same class of persons or things, or statutes which have a common purpose will be regarded in *pari materia* to assure recognition and implementation of the legislative intent. Accordingly, a court should not limit its consideration to any single part, provision, section, sentence, phrase or word, but rather review the act or statute in its entirety to ascertain legislative· intent properly.

Obviously, the portions of the statutes at issue in the case before us all concern providing benefits for a retired employee. Therefore, both the Public Employees Retirement Act and the Public Employees Insurance Act should be read together.

Accordingly, we hold that the West Virginia Public Employees Retirement Act, set forth in *W.Va.Code*, 5–10–1, *et seq.*, must be read *in pari materia* with the West Virginia Public Employees Insurance Act, set forth in *W.Va.Code*, 5–16–1, *et seq.* (specifically, §§ 2(7), 10, 22 and 24 of chapter 5, article 16 of the *W.Va.Code* ). These statutes relate to providing benefits to retired employees who participate in the Public Employees Retirement System. Therefore, employers who elect to participate in the Public Employees Retirement System must, pursuant to *W.Va. Code*, 5–16–22 [1992], contribute to the Public Employees Insurance Agency when its retired employee elects to participate in the Public Employees Insurance Agency. After all, it is by virtue of the employer's participation in the Public Employees Retirement System that the retired employee has the option of electing to participate in the Public Employees Insurance Agency.

### III

The second issue is whether *W.Va.Code*, 5–16–22 [1992] violates the equal protection clause in the *West Virginia Constitution.* For reasons set forth below, we do not find that *W.Va.Code*, 5–16–22 [1922] violates the equal protection clause.[2]

■ At the outset, we point out that this Court has consistently recognized that whenever possible statutes should be found to be constitutional:

'In considering the constitutionality of a legislative enactment, courts must exercise due restraint, in recognition of the principle of the separation of powers in government among the judicial, legislative and executive branches. Every reasonable

---

**2.** Petitioner points out that West Virginia's equal protection clause is not expressly set forth in the state constitution. However, this Court stated in syllabus point 4 of *Israel v. Secondary Schools Activities Commission*, 182 W.Va. 454, 388 S.E.2d 480 (1989) that "West Virginia's constitutional equal protection principle is a part of the Due Process Clause found in Article III, Section 10 of the West Virginia Constitution."

construction must be resorted to by the courts in order to sustain constitutionality, and any reasonable doubt must be resolved in favor of the constitutionality of the legislative enactment in question. Courts are not concerned with questions relating to legislative policy. The general powers of the legislature, within constitutional limits, are almost plenary. In considering the constitutionality of an act of the legislature, the negation of legislative power must appear beyond reasonable doubt.' Point 1 Syllabus, *State ex rel. Appalachian Power Company v. Gainer,* 149 W.Va. 740 [, 143 S.E.2d 351 (1965) ].

Syl. pt. 3, *State ex rel. W.Va. Housing Development Fund v. Copenhaver,* 153 W.Va. 636, 171 S.E.2d 545 (1969). Additionally, this Court has stated the following:

A legislative act which arbitrarily establishes diverse treatment for the members of a natural class results in invidious discrimination and where such treatment or classification bears no reasonable relationship to the purpose of the act, such act violates the equal protection and due process clauses of our federal and state constitutions.

Syl. pt. 1, *O'Neil v. City of Parkersburg,* 160 W.Va. 694, 237 S.E.2d 504 (1977). *See also* syl. pt. 2, *Israel v. Secondary Schools Activities Commission,* 182 W.Va. 454, 388 S.E.2d 480 (1989) ("Equal protection of the law is implicated when a classification treats similarly situated persons in a disadvantageous manner. The claimed discrimination must be a product of state action as distinguished from a purely private activity.") With these basic principles in mind, we will now analyze the case before us.

There are two arguments which the respondents put forth. The first argument made by the local governments is that *W.Va. Code,* 5–16–22 [1992] treats current and retired employees unequally, thereby, violating the equal protection clause. The second argument made by the non-profit mental health corporations is that *W.Va.Code,* 5–16–22 [1992] discriminates between nonprofit corporations which provide mental health services and those nonprofit corporations that do not provide mental health services (the latter are not eligible to participate in PERS).

We do not find any merit to the respondents' arguments. First of all, current employees and retired employees are treated differently by the respondents themselves. For instance, as the petitioner points out, retired employees do not usually receive full pay or full benefits once they retire. Secondly, there is no discrimination between the non-profit mental health corporations and other non-profit corporations since all non-profit corporations which are eligible to participate in PERS are treated equally under *W.Va.Code,* 5–16–22 [1992]: all of them have to contribute to PEIA if their retired employee elects PEIA coverage. Therefore, there is no classification which leads to any discrimination.

However, even if there was discrimination the respondents' arguments would fail under an equal protection analysis. This Court has stated that there are three types of equal protection analyses:

First, when a suspect classification, such as race, or a fundamental, constitutional right, such as speech, is involved, the legislation must survive 'strict scrutiny,' that is, the legislative classification must be necessary to obtain a compelling state interest.... Second, a so-called intermediate level of protection is accorded certain legislative classifications, such as those which are gender-based, and the classifications must serve an important governmental objective and must be substantially related to the achievement of that objective.... [H]owever, this 'middle-tier' equal protection analysis is 'substantially equivalent' to the 'strict scrutiny' test stated immediately above....

Third, all other legislative classifications ... are subjected to the least level of scrutiny, the traditional equal protection concept that the legislative classification will be upheld if it is reasonably related to the achievement of a legitimate state purpose.

*Lewis v. Canaan Valley Resorts, Inc.,* 185 W.Va. 684, 691, 408 S.E.2d 634, 641 (1991) (citations omitted).

■ If we apply the analyses to the case before us, we find that clearly a suspect classification is not involved nor any other classification which would warrant strict scrutiny. Therefore, the legislative classification will be upheld if it is reasonably related to the achievement of a legitimate governmental purpose. Accordingly, we hold that the provision of *W.Va.Code*, 5–16–22 [1992], which requires employers, whether or not they elect to participate in the Public Employees Insurance Agency, to contribute to the Public Employees Insurance Agency if they participate in the Public Employees Retirement System and their retired employees elect to participate in the Public Employees Insurance Agency, does not violate the equal protection principle found in *West Virginia Constitution* art. III, § 10, which is West Virginia's due process clause. Such provision relates to a legitimate governmental purpose of providing medical coverage to retired employees who participate in the Public Employees Retirement System.

## IV

The third issue is whether the title of the bill which enacted *W.Va.Code*, 5–16–22 [1992] violates *W.Va. Const.* art. VI, § 30 by not expressing the objects which are embraced in the bill. We do not find that *W.Va. Const.* art. VI, § 30 has been violated.[3]

■ In syllabus points 1 and 2 of *State ex rel. Walton v. Casey*, 179 W.Va. 485, 370 S.E.2d 141 (1988), we explained what the phrase "shall be expressed in the title" found in *W.Va. Const.* art. VI, § 30 means:

3. The full text of *W.Va. Const.* art. VI, § 30 reads as follows:

No act hereafter passed, shall embrace more than one object, and that shall be expressed in the title. But if any object shall be embraced in an act which is not so expressed, the act shall be void only as to so much thereof, as shall not be so expressed, and no law shall be revived, or amended, by reference to its title only; but the law revived, or the section amended, shall be inserted at large, in the new act. And no act of the legislature, except such as may be passed at the first session under this Constitution, shall take effect until the expiration of ninety days after its passage, unless the legislature shall by a vote of two thirds of the

1. W.Va. Const. art. VI, § 30, which requires that the object of an act of the Legislature 'shall be expressed in the title,' serves two salutary purposes. First, it is designed to give notice by way of the title of the contents of the act so that legislators and other interested parties may be informed of its purpose. Second, it is designed to prevent any attempt to surreptitiously insert in the body of the act matters foreign to its purpose which, if known, might fail to gain the consent of the majority.

2. The requirement of expressiveness contemplated by W.Va. Const. art. VI, § 30 necessarily implies explicitness. ·A title must, at a minimum, furnish a 'pointer' to the challenged provision in the act. The test to be applied is whether the title imparts enough information to one interested in the subject matter to provoke a reading of the act.

Additionally, in syllabus point 2 of *State ex rel. Graney & Ford v. Sims*, 144 W.Va. 72, 105 S.E.2d 886 (1958), we stated that "[i]n considering whether an act of the Legislature is violative of the constitutional requirement concerning its title, the language and title of the act will be construed in the most comprehensive sense favorable to its validity." *See also* syl. pt. 3, *Northwestern Disposal Co., Inc. v. W.Va. PSC*, 182 W.Va. 423, 388 S.E.2d 297 (1989).

■ The relevant portion of the title of the Act in which *W.Va.Code*, 5–16–22 was amended in 1992, reads as follows: "AN ACT ... providing for payment of premium contributions of retired employees[.]"[4] *Acts of*

members elected to each house, taken by yeas and nays, otherwise direct.

4. The entire title found in the *Acts of the Legislature of West Virginia*, Second Regular Session of the 70th Legislature, 1992, chapter 105 reads as follows:

*AN ACT to amend and reenact sections* five, ten, thirteen, fifteen, seventeen, eighteen, *twenty-two* and twenty-four, *article sixteen, chapter five of the code of West Virginia*, one thousand nine hundred thirty-one, as amended; and to amend article nine-a, chapter eighteen of said code by adding thereto a new section, designated section twenty-four, all relating to public employees insurance; costs to retired employees; transfer of certain funds to the medicaid

*the Legislature of West Virginia,* Second Regular Session of the 70th Legislature, 1992, chapter 105. The title clearly indicates that the legislature was ensuring that PEIA premium contributions are made for retired employees who elect to participate in PEIA. The respondents knew that their employees could elect to participate in PEIA when they retired pursuant to PERS. Therefore, the respondents should have been concerned about how this coverage was to be funded since the respondents should be concerned about how their retired employees' benefits under PERS are funded. Accordingly, we hold that *W.Va. Const.* art. VI, § 30 was not violated since the title of the bill enacting *W.Va.Code,* 5–16–22 [1992] should have provoked a reading of the Act by the respondents.

### V

The fourth issue is whether the PEIA Act of 1992 violates the impairment of contract and eminent domain clauses of art. III, §§ 4 and 9 of the *W.Va. Const.* We do not find the *W.Va. Const.* to be violated.

■ First, we address the impairment of contract issue. *W.Va. Const.* art. III, § 4 states, in relevant part, that "[n]o ... law impairing the obligation of a contract, shall be passed." This Court outlined a three-step test which is to be used when determining whether a law unconstitutionally impairs a contract:

> In determining whether a Contract Clause violation has occurred, a three-step test is utilized. The initial inquiry is whether the statute has substantially impaired the contractual rights of the parties. If a substantial impairment is shown, the second step of the test is to determine whether there is a significant and legitimate public purpose behind the legislation.

> Finally, if a legitimate public purpose is demonstrated, the court must determine whether the adjustment of the rights and responsibilities of contracting parties is based upon reasonable conditions and is of a character appropriate to the public purpose justifying the legislation's adoption.

Syl. pt. 4, *Shell v. Metropolitan Life Ins. Co.,* 181 W.Va. 16, 380 S.E.2d 183 (1989).

■ Some of the respondents argue that *W.Va.Code,* 5–16–22 [1992] unconstitutionally impairs their employment contracts with their employees since the respondents have already provided the employees with health insurance which the employees have the option to maintain after they retire. Additionally, these respondents argue that *W.Va. Code,* 5–16–22 [1992] creates a "substantial" impairment since the premium being assessed for the most basic coverage under PEIA is $1,140 per year per employee.

We disagree. As the petitioner points out, the respondents' employees have a right to elect to participate in PEIA once they retire due to their employers' participation in PERS. If the respondents did not participate in PERS, their retired employees could not elect to participate in PEIA. Therefore, by participating in PERS the respondents have agreed to give the employees the option of participating in PEIA once they retire, which is not unlike the option these same employers give their employees when allowing them to choose to continue under the employers' plan once the employees retire.

We find that *W.Va.Code,* 5–16–22 [1992] does not impair any contract, but merely puts responsibility on the employer for financing a benefit the retired employee may choose due to the employer's participation in PERS. Accordingly, the Contract Clause has not been violated since *W.Va.Code,* 5–16–

program; providing that the finance board establish certain premium costs; removing pregnancy as a preexisting condition and providing for continuity of coverage for previously insured new employees with preexisting conditions; requiring county boards of education and other employers to fund premium costs in excess of general revenue appropriations, requiring notification of maximum amount of such costs, setting a maximum amount of such

costs of five million dollars, and limiting use of school aid appropriations to employer premiums for employees whose positions are funded by state funds; requiring employers to pay contributions as determined by the finance board; *providing for payment of premium contributions of retired employees;* and authorizing use of school aid funds for employer premiums.
(emphasis added).

22 [1992] does not substantially impair the contractual rights of the parties.

■ Second, we address the eminent domain issue. *W.Va. Const.* art. III, § 9 states:

Private property shall not be taken or damaged for public use, without just compensation; nor shall the same be taken by any company, incorporated for the purposes of internal improvement, until just compensation shall have been paid, or secured to be paid, to the owner; and when private property shall be taken, or damaged, for public use, or for the use of such corporation, the compensation to the owner shall be ascertained in such manner, as may be prescribed by general law; provided, that when required by either of the parties, such compensation shall be ascertained by an impartial jury of twelve freeholders.

Certain respondents argue that *W.Va. Code,* 5–16–22 [1992] imposes a payment which is a taking of their private property for the private use of the retired employees in violation of *W.Va. Const.* art. III, § 9. Although the respondents' argument is not clear, we point out that fundamentally, *W.Va. Code,* 5–16–22 [1992] cannot be considered as imposing a taking since it is the employer's decision to participate in PERS which activates the imposition of a fee on the employer for health benefits for retired employees. Accordingly, *W.Va. Const.* art. III, § 9 is not violated.

### VI

The fifth issue is whether *W.Va.Code,* 5–16–22 [1992] is preempted by the Employee Retirement Income Security Act of 1974 (hereinafter "ERISA"), as amended, which is found in 29 U.S.C. § 1001, *et seq.* We find that it is not.

**5.** 29 U.S.C. § 1003 was amended in *1989;* however, the amendment does not affect the case before us.

**6.** 29 U.S.C. § 1002 was amended in 1989, 1990, and 1991; however, the amendments do not affect the case before us.

**7.** 29 U.S.C. 1144(a) (1988) states:
 **(a) Supersedure: effective date:** Except as provided in subsection (b) of this section, the

■ The petitioner points out that governmental plans are exempt from ERISA pursuant to 29 U.S.C. § 1003(b)(1) (1988) [5] which states: "(b) The provisions of this subchapter shall not apply to any employee benefit plan if—(1) such plan is a governmental plan (as defined in section 1002(32) of this title) [.]" 29 U.S.C. § 1002(32) (1988),[6] in relevant part, defines "governmental plan" to mean:

(32) The term 'governmental plan' means *a plan established or maintained* for its employees by the Government of the United States, *by the government of any State or political subdivision thereof, or by any agency or instrumentality of any of the foregoing.* The term 'governmental plan' also includes any plan to which the Railroad Retirement Act of 1935 or 1937 [45 U.S.C. 231 *et seq.*] applies, and which is financed by contributions required under that Act and any plan of an international organization which is exempt from taxation under the provisions of the International Organizations Immunities Act [22 U.S.C. 288 *et seq.*].

(emphasis added).

The respondents, Green Acres Regional Center, Prestera Center for Mental Health Services and Valley Comprehensive Mental Health Center, which are non-profit private corporations, argue that since they are private corporations which maintain an employee health care plan which is covered by ERISA, the application of *W.Va.Code,* 5–16–22 [1992] to them is preempted by ERISA pursuant to 29 U.S.C. § 1144(a) (1988).[7] The respondents state that they have their own private health plan covered by ERISA; therefore, *W.Va.Code,* 5–16–22 [1992] cannot be used to force them to pay into a governmental plan.

provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b). This section shall take effect on January 1, 1975.
We note that 29 U.S.C. § 1144 was amended in 1989 and 1993; however, the amendments do not affect the outcome of this case.

We disagree. This Court has stated that PERS is exempt from ERISA since it is a governmental pension plan. *West Virginia Public Employees Retirement System v. Dodd,* 183 W.Va. 544, 553, 396 S.E.2d 725, 734 (1990). Additionally, PEIA is exempt by ERISA since it meets the definition of governmental plan under 29 U.S.C. § 1002(32) (1988). As we stated earlier, all of the respondents participate in PERS, and it is through their participation in PERS that their retired employees may elect to participate in PEIA. Therefore, the respondents have chosen to be involved in a governmental pension plan to provide benefits which is not preempted by ERISA. The respondents may very well provide a private medical plan for their current employees which is covered by ERISA; however, this does not interfere with or preempt the medical benefits which retired employees may elect under PEIA. Accordingly, we hold that *W.Va.Code,* 5–16–22 [1992] is not preempted by ERISA.

## VII

The sixth issue is whether Green Acres Regional Center, Inc., one of the respondents, is an employer under the West Virginia Public Employees Insurance Act. Green Acres argues that since it does not meet the definition of employer found in the West Virginia Employees Insurance Act under *W.Va.Code,* 5–16–2(5) [1990], it can never choose to be a member of PEIA. Therefore, Green Acres argues that it should not be mandated to contribute to PEIA for its retired employees who elect to participate in PEIA.

We determined in the first issue, *supra,* that the West Virginia Public Employees Retirement Act must be read *in pari materia* with the portions of the West Virginia Public Employees Insurance Act which refer to retired employees. Green Acres participates in PERS so it must meet the definition of employer under the West Virginia Public Employees Retirement Act. Green Acres' retired employees meet the definition of retired employee under the West Virginia Public Employees Insurance Act since Green Acres participates in PERS. *See W.Va.Code,* 5–16–2(7) [1990]. Therefore, if Green Acres participates in PERS and its retired employ-ee is eligible to elect PEIA coverage, then Green Acres must contribute to PEIA if the retired employee elects PEIA coverage whether or not Green Acres meets the definition of employer under the West Virginia Public Employees Insurance Act. After all, Green Acres, by choosing to participate in PERS, has elected to provide benefits to its retired employees. Accordingly, we find Green Acres' argument to be without merit.

## VIII

Finally, we must determine whether issuing a writ of mandamus is the proper remedy. In syllabus point 2 of *State ex rel. Kucera v. City of Wheeling,* 153 W.Va. 538, 170 S.E.2d 367 (1969), this Court stated: "A writ of mandamus will not issue unless three elements coexist—(1) a clear legal right in the petitioner to the relief sought; (2) a legal duty on the part of respondent to do the thing which the petitioner seeks to compel; and (3) the absence of another adequate remedy."

*W.Va.Code,* 5–16–22 [1992], in relevant part, mandates:

> Any employer, whether such employer participates in the public employees insurance agency insurance program as a group or not, which has retired employees, their dependents, or surviving dependents of deceased retired employees who participate in the public employees insurance agency insurance program as authorized by this article, *shall pay to the agency* the same contribution toward the cost of coverage for its retired employees, their dependents, or surviving dependents of deceased retired employees as the state of West Virginia, its boards, agencies, commissions, departments, institutions, spending units, or a county board of education pay for their retired employees, their dependents, and surviving dependents of deceased retired employees, as determined by the finance board. Each employer is hereby authorized and required to budget for and make such payments.

(emphasis added). *W.Va.Code,* 5–16–22 [1992] uses the word "shall" to indicate that the employers have a mandatory duty to contribute to PEIA if their retired employee or his dependents elect to participate in PEIA. Although the respondents argue that

the title and beginning of *W.Va.Code,* 5–16–22 [1992] indicate that the statute is not mandatory, a careful reading of the statute indicates that an employer has the option to participate in PEIA. However, if the employer participates in PERS and its retired employee elects PEIA coverage, then the employer has a mandatory duty to contribute to PEIA whether or not it participates in PEIA. In the latter situation, *W.Va.Code,* 5–16–22 [1992] is mandatory.

 Additionally, the respondents who are local governments argue that mandamus may not be used to compel a public official to expend public funds. However, as the petitioner points out, in *State ex rel. Board of Education of County of Kanawha v. Johnson,* 156 W.Va. 39, 190 S.E.2d 483 (1972), this Court issued a mandamus in order to compel the sheriff to return the interest earned on county board of education funds which he wrongfully allocated to the county commission. Therefore, we have issued a writ of mandamus in the past in order to compel a public official to expend public funds when it is shown that the public official has a mandatory duty to expend the funds.

 Green Acres argues that it is not a public body subject to mandamus since it is a private non-profit corporation. We have stated in syllabus point 3 of *Hickman v. Epstein,* 192 W.Va. 42, 450 S.E.2d 406 (1994) that "[e]xcept where public interests are involved, a writ of mandamus is not an available remedy between private persons to enforce a purely private right, duty, or contract." However, a "[m]andamus will lie to compel a corporation to perform a specific legal duty which it owes to the public, or to the relator as one of the public[.]" 55 C.J.S. *Mandamus* § 228 (1948) (footnote omitted). Additionally, as the petitioner points out, this Court found in *Queen v. W.Va. University Hospitals,* 179 W.Va. 95, 365 S.E.2d 375 (1987) that West Virginia University Hospitals, Inc., which is a nonstock, not-for-profit corporation, is a state actor subject to due process and to the Freedom of Information Act because of its statutory nexus to the state. While not directly on point, *Queen* shows that some corporations for limited purposes can be found to be a state actor subject to the same duties as state agencies and officials.

In the case before us, Green Acres elected to participate in PERS, a state retirement program. By making this election, Green Acres elected to take on a public duty to provide retirement benefits to its employees under the statutes governing PERS. It would be illogical to allow Green Acres to reap the benefits of a state retirement program without being responsible for its duties imposed by that program. Therefore, Green Acres is subject to mandamus to compel it to perform a public duty associated with the provision of retirement benefits pursuant to a state retirement program.

Therefore, based on the language in *W.Va. Code,* 5–16–22 [1992], the petitioner has a clear legal right to the relief he requests, and the respondents have a clear legal duty to contribute to PEIA for their retired employees who have elected to participate in PEIA. No party has suggested that another adequate remedy exists. Therefore, a writ of mandamus is proper in this case in order to require the respondents to contribute to PEIA.

Writ granted.

BROTHERTON, C.J., did not participate.

MILLER, Retired J., sitting by temporary assignment.